Kuisis, Appellant, v. Baldwin-Lima-Hamilton
Corp.

Argued September 28, 1973. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Giles J. Gaca,* with him *Janet N. Valentine,* and *Thomson, Rhodes & Grigsby,* for appellant.

*Thomas J. Jackson,* with him *G. Daniel Carney,* and *Thorp, Reed and Armstrong,* for appellee.

OPINION BY MR. JUSTICE POMEROY, May 22, 1974:

On January 17, 1967, appellant, Andrew Kuisis, was injured by a load of steel pipe which fell on him when a brake locking mechanism on the crane from which the pipe was suspended became disengaged. Kuisis brought suit against appellee Baldwin-Lima-Hamilton Corporation (Baldwin), the manufacturer and seller of the crane.[1] At the conclusion of the evidence, Baldwin's motion for a directed verdict was denied and the case went to the jury, which was dismissed when it could not agree on a verdict. The court en banc thereafter denied Kuisis' motion for a new trial and granted Baldwin's motion for judgment on the whole record.[2] Kuisis appealed to the Superior Court, which affirmed the judgment by a per curiam order.[3] We granted allocatur, and now remand the case for a new trial.

## I.

At the outset, we must decide whether appellant's claim was barred by the statute of limitations. Kuisis

---

[1] Baldwin joined the North Star Coal Company, Kuisis' employer and the owner of the crane, as an additional defendant, but North Star was dismissed from the action at the close of the evidence and is not a party to this appeal.

[2] See the Act of April 20, 1911, P.L. 70, §1, as amended, 12 P.S. §684.

[3] 224 Pa. Superior Ct. 65, 301 A.2d 911 (1973). Judge SPAULDING filed a dissenting opinion, joined by Judge HOFFMAN.

filed his original complaint in trespass on January 14, 1969, two days before the two-year statute of limitations[4] expired, alleging negligence in the design, manufacture and sale of the crane. It was specifically alleged that the crane was manufactured and sold with a defective braking system so that it was unreasonably dangerous to Kuisis, and that Baldwin had failed to give appropriate warning to users of the machine. On January 25, 1971, Kuisis was permitted, over objection, to amend his complaint in order to perfect his claim under §402A of the Restatement Second of Torts.[5] That section reads as follows:

"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if (a) the seller is engaged in the business of selling such a product, and (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

"(2) The rule stated in Subsection (1) applies although (a) the seller has exercised all possible care in the preparation and sale of his product, and (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller." The amended complaint included allegations that the defective condition which proximately caused Kuisis' injuries was substantially the same as it had been when the crane was sold by Baldwin, and that Baldwin was engaged in the business of selling cranes. At the close of the evidence, the trial court ruled that the claim of negligence in design and manufacture was not made out, and submitted the case to the jury solely on the issue of liability under Section 402A.

---

[4] Act of June 24, 1895, P.L. 236, §2, 12 P.S. §34.

[5] Section 402A was adopted as the law of Pennsylvania in *Webb v. Zern*, 422 Pa. 424, 220 A.2d 853 (1966).

Amendments to pleadings are freely allowed under our rules of civil procedure,[6] but this liberality is subject to the qualification that an amendment may not introduce a new cause of action after the statute of limitations has run its course. Applying this rule, the court en banc was of the opinion that the amendment to appellant's complaint should have been disallowed. We disagree.

Appellant's claim under §402A was clearly implicit in his allegations of negligence in the design and manufacture of the crane. The principle of strict liability in tort adds nothing to Kuisis' theory of how the accident occurred; it operates merely to simplify his proof problem by eliminating the issue of negligence from the case. If in negligence actions "we have defined 'cause of action' as 'the negligent act or acts which occasioned the injury'", *Saracina v. Cotoia*, 417 Pa. 80, 85, 208 A.2d 764 (1965),[7] under Section 402A, it is *the defect*

---

[6] Rule 1033 of the Pennsylvania Rules of Civil Procedure provides: "A party, either by filed consent of the adverse party or by leave of court, may at any time change the form of action, correct the name of a party or amend his pleading. The amended pleading may aver transactions or occurrences which have happened before or after the filing of the original pleading, even though they give rise to a new cause of action or defense. . . ." See *Bata v. Central-Penn National Bank*, 448 Pa. 355, 293 A.2d 343 (1972); *Glenn v. Point Park College*, 441 Pa. 474, 272 A.2d 895 (1971).

[7] This Court has never adopted a comprehensive definition of what constitutes a cause of action, for the excellent reason that no such definition exists. In *United States v. Memphis Cotton Oil Co.*, 288 U.S. 62, 67-8, 77 L.Ed. 619, 623 (1933), Justice CARDOZO remarked: "A 'cause of action' may mean one thing for one purpose and something different for another. It may mean one thing when the question is whether it is good upon demurrer, and something different when there is a question of the amendment of a pleading or of the application of the principle of res judicata. . . . At times and in certain contexts, it is identified with the infringement of a right or the violation of a duty. At other times and in other contexts, it is a concept of the law of remedies, the identity of the cause being then dependent on that of the form of action or the

*itself* which constitutes the cause of action.[8] Thus, it is of no moment that the theories of negligence and strict liability may be subject to different defenses and require different measures of proof. Assuming arguendo that two different causes of action are involved here, for purposes of the statute of limitations, *both* were stated in the original complaint.

Given the averment in the original complaint that the brake locking mechanism was defective, the new

___

writ. Another aspect reveals it as something separate from writs and remedies, the group of operative facts out of which a grievance has developed. This court has not committed itself to the view that the phrase is susceptible of any single definition that will be independent of the context or of the relation to be governed. Nonetheless, it has fixed the limits of amendment [to a prior pleading after the expiration of the statute of limitations] with increasing liberality. . . ." For a more recent attempt to grapple with this slippery juridical concept, see *Emert v. Larami Corporation*, 414 Pa. 396, 200 A.2d 901 (1964).

[8] See *Polk v. Western Bedding Co.*, 145 Pa. Superior Ct. 142, 147, 20 A.2d 845 (1941), where the court said that under the strict liability provisions of the Workmen's Compensation Act, "[t]he cause of action . . . is the accident which resulted in an injury in the course of . . . employment". Here, of course, the defective condition of the crane's brake locking device was clearly alleged in Kuisis' original complaint. Compare *Breon v. Garbrick Mfg. Co.*, 8 Centre L.J. 127 (1972), in which a change in the complaint from an averment of negligence to a claim of strict liability under §402A was held to introduce a new cause of action. There, the negligence alleged in the original complaint was in the "operation" of an amusement park device.

The vice of the amendment in *Breon*, as well as in *Cox v. Wilkes-Barre Ry. Corp.*, 334 Pa. 568, 6 A.2d 538 (1939), cited in the dissenting opinion of the Chief Justice, is not that it introduced a new theory of liability, but that it advanced a new factor as the cause of plaintiff's injuries. The notion that a complaint weds a plaintiff to a particular theory of liability is foreign to Pennsylvania pleading. Ours is a system of fact pleading, not "theory" pleading; a plaintiff is free to proceed on any theory of liability which the facts alleged in his complaint will support. *See, e.g., Curry Coal Co. v. M. C. Arnoni Co.*, 439 Pa. 114, 266 A.2d 678 (1970).

allegations of the amended complaint fall within the familiar rule that a complaint may be amended after the expiration of the statute of limitations to amplify or clarify a cause of action already stated.[9] Averments in the original complaint that the crane was manufactured for sale, and that it was in fact sold to Kuisis' employer, compel the inference that Baldwin was engaged in the business of selling cranes; to say this in so many words adds nothing of substance to the initial pleading. By the same token, the allegation that there was no substantial change in the defective condition of the crane between the time of sale and the accident merely amplifies appellant's initial claim that a defect in design or manufacture was the proximate cause of his injuries. Kuisis has never deviated from his assertion that his injuries were caused by an unreasonably dangerous condition in the crane, for which the manufacturer-seller was responsible. The allegations of his original complaint comprise "the material facts" on which his claim under §402A is based. *See* 12 P.S. App. R. C. P. 1019 (a). The amended complaint suggests no new theory of causality or breach of duty by the defendant. We are satisfied that it worked no prejudice to Baldwin by stating a new cause of action.

## II.

We turn next to the question whether there was sufficient evidence to withstand a motion for judgment.[10]

---

[9] *See, e.g., Saracina v. Cotoia,* 417 Pa. 80, 208 A.2d 764 (1965) ; *Downes v. Hodin,* 377 Pa. 208, 104 A.2d 495 (1954) ; *Mussolino v. Cowe Bros. & Co.,* 357 Pa. 10, 53 A.2d 93 (1947) ; *Manning v. Andy,* 51 D. & C. 2d 324 (1970), *affirmed* 454 Pa. 237, 310 A.2d 75 (1973) ; *Brehm v. Johnstown Sanitary Dairy Co.,* 7 D. & C. 2d 315 (1955) ; *cf. Webb v. Zern,* 422 Pa. 424, 220 A.2d 853 (1966). *But see Groh v. Philadelphia Electric Co.,* 441 Pa. 345, 271 A.2d 265 (1970).

[10] The considerations under the Act of April 20, 1911, *supra* note 1, are substantially the same as they would be on a motion for

There is no dispute that Kuisis' employer (North Star) had purchased the crane from Baldwin; that Baldwin was a "seller . . . engaged in the business of selling such a product" at the time of the transaction, and that the crane was expected to and did reach the buyer "without substantial change in the condition in which it was sold". That Kuisis was a "user" of the crane within the meaning of §402A appears to be conceded by appellee. The factual issues thus narrow down to three: was there a defect in the brake locking mechanism which constituted an unreasonable danger to users of the crane; if so, was the defect a substantial cause of the injuries sustained by Kuisis; and if so, was the defect present at the time the crane was delivered by Baldwin to North Star? We consider the first two questions in this part II, and the third question in part III, *infra*.

Appellant introduced no direct evidence of a specific defect in the brake locking mechanism. Instead, he attempted to prove the existence of a defect indirectly, through the circumstances immediately surrounding Kuisis' mishap, and the occurrence of five earlier malfunctions of the lock. The circumstances of the accident were as follows: A minute or two before the load of pipe fell, the crane operator set the locking device to hold the load about four feet off the ground. After checking in the normal manner to see that the lock was engaged,[11] he left the cab. It was while the operator

---

judgment *non obstante veredicto* under the Act of April 22, 1905, P.L. 286, §1, as amended, 12 P.S. §681, had there been a verdict for the plaintiff. The evidence and the inferences therefrom must be viewed in the light most favorable to plaintiff. *See Lambert v. Pittsburgh Railway Co.*, 405 Pa. 364, 175 A.2d 870 (1961); *Johnson v. Dew*, 204 Pa. Superior Ct. 526, 205 A.2d 880 (1964); 6A Standard Pennsylvania Practice, §173 et seq.

[11] The brake locking device operated on the principle of a ratchet. The operator would engage the lock by depressing the brake pedal to the desired level and releasing a chain attached to a pawl

was absent from the controls that the pipe fell, injuring Kuisis, who was standing by the load. Returning to the cab after the accident, the operator noticed that the locking device was disengaged and the brake was in the "up" or released position. The other parts of the crane's lifting mechanism were all in good working order.

These facts were clearly sufficient to support a jury finding that the locking mechanism malfunctioned; and in the absence of other identifiable causes, the malfunction itself is evidence of a "defective condition" within the meaning of §402A. *MacDougall v. Ford Motor Co.,* 214 Pa. Superior Ct. 384, 257 A.2d 676 (1969); *Lindsay v. McDonnell Douglas Aircraft Corp.,* 460 F.2d 631 (8th Cir. 1972); *Greco v. Bucciconi Engineering Co.,* 283 F. Supp. 978 (W.D. Pa. 1967), *affirmed,* 407 F.2d 87 (3d Cir. 1969); see also *Bialek v. Pittsburgh Brewing Co.,* 430 Pa. 176, 242 A.2d 231 (1968). This rule reflects the fact that liability under §402A turns on a lack of fitness in the defendant's product, as in the case of an action for breach of warranty, rather than on the breach of a particular duty of care by the defendant, as in the case of an action for negligence. While a plaintiff's hand in a strict liability case will obviously be strengthened by evidence of a specific defect in the defendant's product, such evidence is not necessary to take this part of the plaintiff's case to a jury. We agree with the court en banc below that, on the evidence here presented, a jury could find that a defect existed in the brake locking mechanism, and that this defect was unreasonably dangerous to users of the crane.

---

or "dog", which would drop into place against a series of metal teeth spaced along the brake pedal arm. To ascertain whether the lock was properly engaged, he would remove his foot from the pedal and observe the result. The dog itself was beneath the floor of the cab, and could not be seen by an operator positioned at the controls.

330

Attempting to distinguish the *MacDougall* line of cases, Baldwin points out that the operator's absence from the controls while a load was suspended violated the regulations of the Pennsylvania Department of Labor and Industry.[12] This conduct, the argument continues, was negligence per se, and constituted such a gross deviation from accepted practices as to prevent any inference of a defect in the locking mechanism. Granting, without so deciding, that violation of the departmental regulation was negligence per se, we do not think this affects the applicability of *MacDougall*. When a malfunction occurs, a concurrent abnormal use of the machine forecloses an inference of a defective condition only if the abnormal use itself contributed to the malfunction. Here, while the operator's absence from the cab might be found to be *a* cause of the accident, it certainly did not cause the release of the brake locking device. The inference of a defect in the locking mechanism is equally probable no matter where the operator was when the pipe fell.

Given the occurrence of a malfunction, the operator's alleged negligence assumes legal significance only if it was a superseding cause of Kuisis' injuries. Questions of proximate causation should normally be left to the finder of fact, and this case is no exception. We certainly cannot say as a matter of law that the accident would not have occurred had the operator remained at the controls, particularly since all five earlier failures of the locking device had happened while an operator was in the cab. Moreover, even if the operator's negli-

---

[12] Title 34, Pennsylvania Code, §25.76(f) (formerly Rule 209(f) of the Pennsylvania Department of Labor and Industry, in effect at the time of the accident), provides as follows: "When weight is suspended from the crane hook, the operator shall not leave his position at the levers for any purpose". We are required to take judicial notice of the contents of the Pennsylvania Code. Act of July 31, 1968, P.L. 769, No. 240, Art. VI, §604, 45 P.S. §1604.

gence was a cause in fact of the accident, it would not be a superseding cause unless this negligence were outside Baldwin's reasonable range of foreseeability.[13] The existence of the brake locking device was an invitation to its use. Whether Baldwin should have foreseen that an operator, having suspended a load and engaged the lock, might negligently leave the cab was a question for the jury.[14] See *Flickinger Estate v. Ritsky*, 452 Pa. 69, 305 A.2d 40 (1973).

## III.

Proving that a defect in the crane existed at the time of the accident and that it was the proximate cause

---

[13] *See, e.g.*, the strikingly similar case of *Brooks v. Allis-Chalmers Mfg. Co.*, 163 Cal. App. 2d 410, 329 P.2d 575 (Dist. Ct. App. 1958) ; Restatement of Torts 2d, §447 ; W. Prosser, Handbook of the Law of Torts, §51 (3d ed. 1964). Elsewhere, Professor Prosser has noted that this principle carries over from traditional negligence law to strict liability cases. Prosser, The Fall of the Citadel (Strict Liability to the Consumer), 50 Minn. L. Rev. 791, 826-27 (1966). It makes no difference in this regard whether the operator's conduct is characterized as an intervening act of negligence or as an "abnormal use" of the crane; whether under §402A a particular use of a product is abnormal depends on whether the use was reasonably foreseeable by the seller. Restatement of Torts 2d, §402A, comment h; *Hoppe v. Midwest Conveyor Co.*, 485 F.2d 1196 (8th Cir. 1973) ; *Higgins v. Paul Hardeman, Inc.*, 457 S.W.2d 943 (Mo. App. 1970) ; *Williams v. Brown Mfg. Co.*, 45 Ill.2d 418, 425, 261 N.E.2d 305, 309 (1970) (dictum) ; cf. *Dyson v. General Motors Corp.*, 298 F. Supp. 1064 (E.D. Pa. 1969).

[14] Assuming that the operator could have prevented the accident had he remained at the controls and that Baldwin should have foreseen that an operator might leave the cab with a load suspended, we think that Baldwin had to do one of two things in order to render the crane not unreasonably dangerous to its users, viz., either supply a brake locking mechanism not dependent on the presence of the operator for its effectiveness, or provide an adequate warning to operators of the danger in leaving the cab while the lock was engaged. See *Incollingo v. Ewing*, 444 Pa. 263, 287-289, 282 A.2d

of Kuisis' injuries was, however, only part of appellant's burden; he had also to prove that the defect was present when the crane came into North Star's possession. See §402A, comment g. When a product malfunctions shortly after delivery, the inference that the alleged defect originated prior to sale may be so compelling that a defendant will not bother to place this part of the case in issue, even in the absence of evidence of the specific nature of the defect. See, e.g., *MacDougall v. Ford Motor Co., supra.* Here, however, the crane was sold by Baldwin to North Star over twenty years before the accident, and the origin of the alleged defect in the locking mechanism is hotly disputed. The sufficiency of the evidence on this aspect of liability is, therefore, of peculiar importance in the circumstances of this case.

The crane was originally manufactured as a shovel, and sold to North Star in that form in 1946. In the following two decades, the machine saw extensive use for a variety of purposes. After functioning for several years as a shovel, it was converted first into a dragline and later into a crane. There was conflicting evidence as to the amount of maintenance the machine received. At least two motors wore out in succession and had to be replaced. The brake bands were changed several times, and the brake pedals and the brake lock release chain were each replaced at least once. A succession of operators used the crane, each one making his own adjustments to the brakes as required. In light of this evidence, the court below was of the opinion that the

---

206 (1971) ; Restatement of Torts 2d, §402A, comments h and j. Relying on these comments by the American Law Institute, appellant argues that the trial court erred in not instructing the jury on Baldwin's duty to warn. We think, however, that this issue was properly withheld from the jury in the absence of evidence supporting an inference that the condition which caused the malfunction of the brake locking device was present at the time of the delivery of the crane. See part III, *infra.*

crane had undergone changes so substantial as to render speculative any conclusion that the alleged defective condition was present at the time of delivery.

Although, in its opinion, the court en banc spoke in terms of substantial changes in the crane as a whole, the parties agree that the proper focus of attention is the brake locking mechanism; the enumerated changes are relevant only insofar as they affect this particular component part. If there were direct evidence of a specific defect in the locking device present at the time the crane was delivered, we think the enumerated changes would have relevance to the issue of Baldwin's liability only if, individually or in combination, they amounted to a superseding cause of plaintiff's injuries. Compare *Greco v. Bucciconi Engineering Co.*, 407 F.2d 87 (3d Cir. 1969) with *Speyer, Inc. v. Humble Oil & Refining Co.*, 403 F.2d 766 (3d Cir. 1968).[15] But we

---

[15] Pursuing this line of analysis, some courts have held that post-delivery alterations are beyond the scope of the "substantial change" language of §402A. See, e.g., *Bradford v. Bendix-Westinghouse Automotive Air Brake Co.*, 33 Col. App. 99, 517 P.2d 406 (1973); *Dennis v. Ford Motor Co.*, 471 F.2d 733 (3d Cir. 1973) (purporting to apply Pennsylvania law, but without citation to authority). Section 402A itself is ambiguous on this question, although the examples given in comment p, *Further processing or substantial change*, are limited to changes in the product subsequent to manufacture but prior to delivery. The question seems to be of academic interest only, since, as *Greco* and *Speyer* illustrate, courts which have discussed post-delivery alterations in terms of substantial change have treated the problem as one of proximate causation.

It need hardly be added that, like the question of the crane operator's alleged negligence discussed in part II, *supra*, the question whether a post-delivery alteration in a product is a superseding cause of harm to a plaintiff may turn on foreseeability as well as causation in fact. If the alteration should have been reasonably anticipated by the seller, it would be a "substantial change" within the meaning of §402A only if it were negligently or improperly implemented. See *D'Antona v. Hampton Grinding Wheel Co.*, 225 Pa. Superior Ct. 120, 310 A.2d 307 (1973). Here, for example, the

deal here with antecedent rather than superseding causes; the question is not whether substantial changes in the crane superseded a pre-existent defect as the proximate cause of Kuisis' injuries, but whether the changes were themselves the cause of the defect. Here, the appellant asked the jury to infer from circumstantial evidence that an unspecified defect was present when the machine was turned over to North Star. Even though no definite relationship has been demonstrated between this supposed defect and any particular event in the history of the crane in the hands of its purchaser, this history is relevant in testing the strength of the proffered inference.

The questions when and where a defect originated should be left to the finder of fact so long as "reasonable and well balanced minds [could] be satisfied from the evidence adduced that the defective condition existed when the machine was delivered [citations omitted]". *Greco v. Bucciconi Engineering Co.*, 407 F.2d 87, 90 (3d Cir. 1969) (applying Pennsylvania law); see also *Burbage v. Boiler Engineering & Supply Co.*, 433 Pa. 319, 249 A.2d 563 (1969). On the other hand, "the jury may not be permitted to reach its verdict merely on the basis of speculation or conjecture, but . . . there must be evidence upon which logically its conclusion may be based [citations omitted]". *Smith v. Bell Telephone Co.*, 397 Pa. 134, 138, 153 A.2d 477 (1959).

On the evidence here presented, then, the question is whether a jury could reasonably draw the inference that the brake locking mechanism was defective when the crane was delivered to North Star. We think that any such conclusion would be no more than a guess.

---

successive conversions of Baldwin's machine from shovel to dragline and from dragline to crane clearly fall within the category of foreseeable alterations, since Baldwin admitted that these conversions were contemplated in the design of the vehicle and that they could be made without affecting the brake locking mechanism.

Section 402A does not make manufacturers and sellers insurers of their products. They are not liable for defects caused by normal wear-and-tear or misuse of a product by its purchaser, however foreseeable these events may be. Here, the vicissitudes of over twenty years of rugged use of the crane make these possible sources of the alleged defect in the locking device no less likely than an error in manufacture or design. Only two items of circumstantial evidence arguably support appellant's contention that a defect was present in the crane prior to its sale: a safety engineer who examined the crane two years after the accident found no sign of wear in the brake locking mechanism, and a malfunction of the locking device had occurred about four years after the purchase of the crane, under different conditions from the accident which resulted in Kuisis' injuries.[16] Viewed against the record as a whole, these

---

[16] The crane, which was then rigged as a shovel, was tilted at a steep angle; the driver was fumbling for a pin which was rolling along the floor of the cab. We discount testimony concerning four other malfunctions of the locking device, all of which occurred after 1966. If anything, this sudden spate of malfunctions in the two years immediately preceding the accident, after almost two decades of relatively troublefree operation, suggests that the alleged defect originated after the crane passed out of the seller's hands.

Appellant argues that the trial court erred in limiting the testimony of North Star's maintenance superintendent on the lack of change in the brake locking device, and that the court's ruling was inconsistent with its conclusion that there was substantial change in the crane. Our review of the record convinces us that the trial court's ruling was correct. The particular question to which objection was taken required the witness to compare his observations of the locking device after the accident with the original blueprints and pictures of the device from a Baldwin parts book. Since there was no dispute that the design of the mechanism had not been altered, the proffered testimony was superfluous. The witness testified without objection that the mechanism showed no signs of breakage after the accident; he was not asked about other relevant physical changes, such as signs of wear.

slender evidentiary threads are not enough to lift this contention out of the realm of speculation.

We recognize that, as a general rule, "prolonged use of a manufactured article is but one factor, albeit an important one, in the determination of the factual issue whether [a defect in design or] manufacture proximately caused the harm." *Pryor v. Lee C. Moore Corp.*, 262 F.2d 673, 675 (10th Cir. 1958). The age of an allegedly defective product must be considered in light of its expected useful life and the stress to which it has been subjected. In most cases, the weighing of these factors should be left to the finder of fact. But in certain situations the prolonged use factor may loom so large as to obscure all others in a case. Professor Prosser has summarized the position generally taken by the courts on this question: "[Lapse of time and long continued use] in itself is not enough, even when it has extended over a good many years, to defeat the recovery where there is satisfactory proof of an original defect; but when there is no definite evidence, and it is only a matter of inference from the fact that something broke or gave way, the continued use usually prevents the inference that the thing was more probably than not defective when it was sold".[17] Were there any direct evidence of a specific defect in the brake locking mechanism at the time of delivery, the age of the crane would not, as a matter of law, defeat liability, but in

---

[17] Prosser, The Fall of the Citadel (Strict Liability to the Consumer), 50 Minn. L. Rev. 791, 844-45 (1966). *Pryor v. Lee C. Moore Corp.*, 262 F.2d 673 (10th Cir. 1958) and the other cases relied by appellant for the proposition that prolonged use of an allegedly defective product does not insulate the manufacturer from liability as a matter of law are distinguishable on this point. Compare, e.g., *Jakubowski v. Minnesota Mining & Mfg. Co.*, 42 N.J. 177, 199 A.2d 826 (1964). *See Larson v. Thomashow*, 17 Ill. App.3d 208, 307 N.E. 2d 707 (1974).

the absence of such evidence in the record before us, we do not think appellant has made out a case for the jury.

## IV.

This brings us to the last question in this case: the exclusion of expert testimony on behalf of appellant. Appellant offered only one expert witness, a safety engineer named Louis Barbe, who was prepared to testify both to the cause of the accident and the specific nature of the alleged defect in the brake mechanism. Barbe was no more qualified than the jury to conclude from the immediate circumstances surrounding the fall of the pipe that some defect in the locking mechanism was the cause of the accident. Allowing an "expert" to draw this inference solely on the basis of the testimony of appellant's other witnesses would have been a misuse of expert testimony; thus, a hypothetical question as to the cause of the accident, based solely on this testimony, was properly excluded. But there was other evidence available which was a proper subject for opinion evidence by one having technical expertise in product safety. Barbe had reviewed the blueprints of the brake locking device, which were admitted into evidence, and he had also personally inspected the crane on two occasions after the accident. These observations, together with the testimony of the other witnesses at trial, provided an adequate evidentiary foundation for the opinion of a qualified expert as to whether the accident was caused by a defect in the design of the brake locking mechanism. The question is: was Barbe so qualified? The lower court thought not.

Appellee points to the fact that Barbe was by his own admission a "safety engineer" rather than a mechanical engineer, and that he was not registered to practice mechanical engineering. From this it is argued

that Barbe was not qualified to express an opinion on matters of design. But an engineer need not be registered as such in order to testify as an expert if his education and experience so qualify him. *Lance v. Luzerne County Manufacturers Association,* 366 Pa. 398, 77 A.2d 386 (1951). The standard of qualification is a liberal one: "If a witness 'has any reasonable pretension to specialized knowledge on the subject under investigation he may testify, and the weight to be given to his evidence is for the jury: [citations omitted]. . . .' Mc-Cullough v. Holland Furnace Co., 293 Pa. 45, 49 [141 A. 631 (1928)]". *Moodie v. Westinghouse Electric Corp.,* 367 Pa. 493, 501, 80 A.2d 734 (1951). Barbe met and exceeded this standard. To recite only the most pertinent of his credentials: he holds a B.S. degree from the Illinois Institute of Technology, where he took "the full line of mechanical engineering courses";[18] he worked for two and a half years for American Hoist and Derrick Company, a competitor of Baldwin, as director of the company's safety program, including safety development; for an unspecified period he was safety engineer in charge of Bureau of Labor inspections for the state of Iowa, where his duties extended to inspecting construction equipment, including cranes; and he is on the committee of the American National Standards Institute, which determines federal safety standards for cranes, hoists, and derricks. We are satisfied that he is competent to testify on the design of the brake locking device as it relates to his particular area of expertise: product safety.[19]

Acknowledging Barbe's general competence in mat-

---

[18] Record of Testimony, 198.

[19] See *Brooks v. Allis-Chalmers Mfg. Co.,* 163 Cal. App. 2d 410, 329 P.2d 575 (Dist. Ct. App. 1958), another crane accident case, in which a safety engineer was permitted to testify on negligence in the design of a locking mechanism which worked on identical principles to the locking mechanism with which this case is concerned.

ters of design safety, the court en banc held that his testimony had been properly excluded on the narrow ground that he was not qualified to give an opinion on what constituted a safe design of a brake locking mechanism in 1946, the year the crane was manufactured. We think this ruling was erroneous. Barbe was familiar with the performance standards which were applicable to cranes in 1946, and he had personally examined approximately twenty cranes of that vintage. " 'The test applied must not set the standard of qualification so high as to exclude the only available kind of testimony ordinarily available in such cases.' White v. R.R. Co., 222 Pa. 534, 537 [71 A. 1081 (1909)]". *Moodie v. Westinghouse Electric Corp., supra.* We conclude that the learned trial judge abused his discretion in excluding Barbe's testimony, and the case must, therefore, be remanded for a new trial, at which he or a similarly qualified expert must be permitted to testify on appellant's behalf.[20]

---

[20] The proffered testimony of appellant's expert witness would have borne on the question of Baldwin's negligence in designing and manufacturing the crane as well as on the question of strict liability. Thus, the dissenting opinion of the Chief Justice is mistaken in assuming that a disallowance of Kuisis' amended complaint would dispose of this case. Since the testimony of this witness was erroneously excluded, the case would have to be retried on the issue of Baldwin's negligence even if Kuisis' claim under §402A were held to be barred by the statute of limitations.

There has been no waiver of the negligence issue, as the dissenting opinion suggests. The exclusion of the expert's testimony was objected to at the trial, and was asserted as one of the grounds in support of appellant's motion for a new trial, as well as his motion to dismiss Baldwin's motion for judgment on the record. Kuisis' two motions, combined in one pleading, were disposed of by a single order granting Baldwin's motion for judgment on the record. It was from this order that Kuisis appealed. In short, appellant asserted below, and has argued here, that the record was improperly diminished as it went to the jury. It is because we agree with this position that a new trial is being awarded. Our

Judgment reversed, and a new trial ordered.

Mr. Justice EAGEN concurs in the result.

------

action is in full accord with the holding in *Mincy v. Washington National Insurance Co.*, 130 Pa. Superior Ct. 285, 196 A. 893 (1938), cited in the dissenting opinion, *infra*, note 5.

------

CONCURRING OPINION BY MR. JUSTICE ROBERTS:

I concur in the granting of a new trial on the ground that the trial court incorrectly refused to permit appellant's expert to testify.

I also agree that the trial court properly exercised its discretion in allowing appellant to amend his complaint. The reason for my conclusion that the amendment was proper can be stated simply and without embellishment. The facts alleged in appellant's initial complaint plainly give rise to a section 402A claim. Restatement (Second) of Torts § 402A (1966).

However, I cannot join parts II and III of the majority's opinion. There, the majority considers questions that are unnecessary for the present disposition of this appeal. Manifestly, this Court's grant of a new trial makes consideration of those questions premature. The resolution of those questions, if indeed they arise, is better left for another day.

Mr. Justice MANDERINO joins in this concurring opinion.

------

DISSENTING OPINION BY MR. CHIEF JUSTICE JONES:

I disagree with the majority view that appellant's claim was not barred by the statute of limitations. I therefore respectfully dissent.

In the present case appellant was permitted, over appellee's objection, to amend his complaint to include allegations of liability pursuant to Restatement 2d, Torts §402A, more than two years after the statute of

limitations had expired.[1] We are concerned here with the policy of freely allowing amendments to pleadings and the rule that where the controlling facts are *all* stated, and the statement is otherwise sufficient, any amendment which merely amplifies the original cause of action will be allowed even after expiration of the statute of limitations, juxtaposed with the corollary rule that a new cause of action may not be introduced into the case by way of amendment to the complaint after the statute of limitations has expired. *See Arner v. Sokol,* 373 Pa. 587, 96 A.2d 854 (1953); *Cox v. Wilkes-Barre Ry. Corp.,* 334 Pa. 568, 6 A.2d 538 (1939); *Goldberg v. Friedrich,* 279 Pa. 572, 124 A. 186 (1924). Two related questions are thus presented for our decision. Did the original complaint set forth a claim under Section 402A; and, if not, did the amendment to that complaint introduce a new cause of action?

The pertinent portions of appellant's original complaint are paragraphs 4 and 5 wherein the theory of recovery is set forth:

"4. Plaintiff, while an employee of North Star Transfer was helping to load some pipe when a crane, manufactured by Baldwin-Lima-Hamilton Corporation in such a defective and negligent manner dropped the load on top of plaintiff from which the plaintiff suffered injuries.

"5. The injuries and damages hereinafter set forth were caused by, and were the direct and proximate re-

---

[1] At the conclusion of the evidence in the trial of the case appellee moved for a directed verdict, but this motion was denied. The case went to the jury solely on the theory of Section 402A liability. After approximately five and a half hours of deliberation, however, the jury reported that it was deadlocked, and was subsequently discharged. Thereafter, appellee filed a motion for judgment on the whole record. This motion was argued before the court en banc and was granted, the court finding, *inter alia,* that the amended complaint should not have been allowed.

sult, of the *negligence, willfulness* and *wantonness* of defendant, generally, and in the following particulars: [eleven specific assignments of negligence, willfulness and wantonness]." (Emphasis added.)

It is clear from the complaint that appellant's theory of liability was one of negligence and not one of strict liability under Section 402A[2] Nor could any amendment to that complaint be said to be an amplification or clarification of a cause of action *already stated.* It is of no moment that the original complaint averred some of the facts upon which a Section 402A could have been based. *See Groh v. Philadelphia Electric Co.,* 441 Pa. 345, 271 A.2d 265 (1970) ; *Cox. v. Wilkes-Barre Ry. Corp.,* 334 Pa. 568, 6 A.2d 538 (1939). This is not a case of adding facts to amplify a previously, even though weakly, stated theory, but, *at best,* one of adding new facts from which a new theory of liability can *thereafter* be inferred. The former is permissible; the latter is not. I believe the majority failed to perceive this distinction.

---

[2] In Pennsylvania the pleadings must allege *all* ultimate facts upon which a cause of action is based. Pa. R. C. P. 1019. This system of fact pleading serves to secure a full and concise statement of the facts upon which a claim is based so that the other party will know with reasonable certainty the nature and character of such a claim. A litigant is not required to plead as such the particular theory or theories upon which he sues. Such theory or theories, however, must be disclosed by the facts and a theory not supported by the allegations of the complaint may not be proved at trial. *See* 3 Pennsylvania Standard Practice, ch. 11, §42. All the ultimate facts upon which appellant would have been entitled to recover under Section 402A were *not* contained in the original complaint. In fact, the only such facts are those also consistent with the enunciated theory of negligence and included in the complaint for the express purpose of amplifying *that theory.* On the original complaint alone, appellant would not have been entitled to have his case submitted to the jury on a theory of Section 402A liability.

The remaining question is whether the amendment to the complaint introduced a new cause of action.[3] This Court has fashioned a four-pronged test to be applied when the question presented is whether an amended statement presents a new and different cause of action: (1) would a judgment bar any further action on either, (2) does the same measure of damages support both, (3) are the same defenses open in each, and (4) is the same measure of proof required? *Saracina v. Cotoia*, 417 Pa. 80, 208 A.2d 764 (1965); *Raskus v. Allegheny Valley Street Ry. Co.*, 302 Pa. 34, 153 A. 117 (1930); *Goldberg v. Friedrich*, 279 Pa. 572, 124 A. 186 (1924). Applying that test to the present facts, we find that three of the four inquiries must be answered in the negative. An *adverse* judgment in an action based on either negligence or Section 402A would not, in itself, bar a subsequent action under the other theory. The same defenses are not open in each, nor is the same measure of proof required in each. Since the two theories are merely alternative bases of relief for one injury, however, the same measure of damages would

---

[3] Appellant amended his complaint by amending paragraphs 4 and 5 to read as follows:

"4. Plaintiff, while working as an employee of North Star Coal Company, which was the owner of a crane that had been manufactured by and sold by Baldwin-Lima-Hamilton Corporation, was injured when a load being supported by that crane dropped onto the plaintiff as a consequence of a defective condition in the crane that had been present since its manufacture and as a consequence of the negligent manner in which the crane had been designed and manufactured.

"5. The injuries and damages hereinafter set forth were proximately caused by the defective condition in the crane that was substantially the same as it had been when the crane was sold by the defendant, which was engaged in the business of selling cranes, and by the negligence of the defendant, the particulars of which are set forth, as follows:"

naturally support both.[4] Under this test it is clear that the amendment introduces a new cause of action.

To sanction the amendment to appellant's complaint in this case would prejudice appellee not because it might lose its case on the merits if the amendment is allowed, but because the new allegation was offered *late*. An amendment will not be allowed if such allowance would undermine the valid policies embodied in the statute of limitations. *Bata v. Central-Penn National Bank*, 448 Pa. 355, 380, 293 A.2d 343, 357 (1972). Since the only theory upon which appellant's case was sent to the jury was Section 402A liability, a finding that the amendment to the complaint was improperly allowed would resolve the case.

The majority claims, however, that even if Kuisis' claim under Section 402A were held to be barred by the statute of limitations, the case would have to be retried on the issue of negligence. Again I respectfully disagree. The diminished record, insofar as the excluded expert's testimony would have borne on negligence, is of *no relevance* to this appeal. Appellant's appeal from the Court of Common Pleas was from that court's order

---

[4] The propriety of amending a complaint alleging negligence to include allegations of liability under Section 402A has twice been before the courts of this Commonwealth. In *Webb v. Zern*, 422 Pa. 424, 220 A.2d 853 (1966), the case in which this Court adopted Section 402A as the law of Pennsylvania, the appellant was permitted to amend his complaint to explicitly state a cause of action for defective products liability since he had broadly pleaded those facts necessary to a cause of action for defective products liability and since not until that case had we adopted this new basis of liability. Similarly in *Thompson v. Wyeth Laboratories*, 46 Pa. D. & C. 2d 360 (Del. C. P. 1969), the plaintiff was permitted to amend his complaint to clarify the allegation of products liability where the necessary facts had been broadly pleaded and where the original complaint had been filed prior to this Court's ruling in *Webb v. Zern*. The present case, however, was commenced almost three years after this Court's decision in *Webb v. Zern*.

granting judgment on the whole record.[5]   At that stage, negligence was no longer a part of appellant's case. Appellant did not object to the trial court's action withdrawing the issue of negligence, nor was this action appealed from.[6]   Consequently, even if Kuisis' claim is not barred by the statute of limitations, the issue of negligence *may not* be retried.

I would affirm the order of the Superior Court.

Mr. Justice NIX joins in this dissenting opinion.

---

[5] As aptly stated in *Mincy v. Washington National Insurance Co.,* 130 Pa. Superior Ct. 285, 295, 196 A. 893, 897-98 (1938) : "A motion for judgment upon the entire record must be disposed of upon the record as it existed 'at the close of the trial.' The court can neither eliminate evidence which may have been improperly admitted, nor insert offers of evidence which should have been admitted but were excluded; the remedy in either case is a new trial. . . ." Thus, assuming that the statute of limitations did not bar the amendment to the complaint, if evidence bearing on appellee's liability under Section 402A were improperly excluded, appellant would be entitled to a new trial based on *Section 402A* liability.

[6] Appellant had available as grounds for appeal on this issue the improper exclusion of the proffered testimony of the expert on negligence, but chose not to pursue this avenue.