Dennis & Jean PETERS,
H/W, Appellees

v.

Jaan SIDOROV, MD, and Christina
Anderson, MD, Geisinger Medical
Center, Geisinger Systems Services,
Geisinger Clinic, Appellants

Jean G. Peters, Appellee

v.

Agarwal Subhasish, M.D., Jaan Sidorov,
M.D., Christina Anderson, M.D. and
Geisinger Medical Center

Appeal of: Jaan Sidorov, M.D.,
Christina Anderson, M.D. and
Geisinger Medical Center

Superior Court of Pennsylvania.

Argued April 14, 2004.
Filed July 23, 2004.

Sheila A. Haren, Philadelphia, for Sidorov and Anderson.

Daniel E. Lohr, Danville, for Geisinger Medical, Geisinger Systems and Geisinger Clinic.

Franklin E. Kepner, Berwick, for appellees.

Before: BENDER, McCAFFERY and TAMILIA, JJ.

OPINION BY TAMILIA, J.:

¶ 1 Appellants appeal from the March 19, 2003 Order granting preliminary objec-

tions alleging improper venue and transferring the underlying action from Luzerne County to the Court of Common Pleas of Columbia County.

¶ 2 This case arises from two related medical malpractice actions originally filed in Luzerne County.[1] Appellee Jean Peters received outpatient medical care from three individual doctors, all of whom are named defendants, at Geisinger Medical Center in Montour County. Appellees allege the appellant doctors negligently prescribed Prednisone, which caused Peters to suffer an allergic reaction. Peters ingested the drug while in her home in Columbia County, and suffered an allergic reaction there.

¶ 3 Appellants filed a petition to transfer the case from Luzerne County to Montour County pursuant to 42 Pa.C.S.A. § 5101.1, Venue in medical professional liability actions,[2] and amended rules 1006 Venue, Change of Venue,[3] and 2179, Venue,[4] of the Pennsylvania Rules of Civil Procedure. They argued that pursuant to Rule 1006, the "cause of action arose" in Montour County since the alleged negligence occurred there. Following argument on the petition, the trial court found venue in Luzerne County was improper under amended Rule 1006; rather, the court concluded the cause of action arose in Columbia County where Peters suffered the injury, and transferred venue there.

1. The first, (Common Pleas no. 5894–C–2002, our 694 MDA 2003 and 920 MDA 2003), was initiated by writ on August 28, 2002. The captioned parties are Jean Peters as plaintiff and Drs. Subhasish, Sidorov, and Anderson and Geisinger Medical Center as defendants. On September 10, 2002, a second writ was issued (Common Pleas no. 6346–C–2002, our 695 MDA 2003 and 921–MDA–2003). In that case, Dennis Peters was added as a plaintiff, and Geisinger Medical Group, Geisinger Clinic–Danville and Geisinger System Services were listed as corporate defendants. Complaints were filed in both actions on November 19, 2002. The complaints are identical with the exception of the parties and a consortium count added at 6346–C–2002. It appears that Dr. Subhasish (whose name also appears in the record as Dr. Subasish) was never served and an appearance has not been entered on his behalf in the trial court or in this Court. He did not participate in any proceedings at the trial court and is not participating in this appeal.

2. 42 Pa.C.S.A. § 5101.1 Venue in medical professional liability actions, (b) General Rule, provides,

Notwithstanding any other provision to the contrary, a medical professional liability action may be brought against a health care provider for a medical professional liability claim only in the county in which the cause of action arose.

42 Pa.C.S.A. § 5101.1. Although an en banc panel of the Commonwealth Court recently found 42 Pa.C.S.A. § 5101.1 to be unconstitutional because it held the matter of venue is procedural in nature and therefore committed to the exclusive authority of the Pennsylvania Supreme Court, see North–Central Pennsylvania Trial Lawyers Assoc. v. Weaver, 827 A.2d 550 (Pa.Cmwlth.2003), we are not bound by that decision. Connor v. Crozer Keystone Health Sys., 832 A.2d 1112, n. 3 (Pa.Super.2003).

3. Amended Pa.R.C.P. 1006(a.1) provides, in relevant part, that "a medical professional liability action may be brought against a health care provider for a medical professional liability claim only in a county in which the cause of action arose." Pa.R.C.P. 1006(a.1). Our Supreme Court added subsection (a.1) to Rule 1006 on January 27, 2003. Pursuant to its amendatory Order of March 5, 2003, the Supreme Court made Rule 1006 applicable to medical professional liability actions filed on or after January 1, 2002. As these actions were filed in August and September 2002, amended Rule 1006 is applicable.

4. Amended Rule 2179, which pertains to venue in personal actions against a corporation or similar entity, reiterates that Rule 1006(a.1) governs venue in actions for "medical professional liability." The Supreme Court's March 5, 2003 Order also made amended Rule 2179 applicable to medical professional liability actions filed on or after January 1, 2002.

¶ 4 Appellants argue the trial court erred in determining that under the Pennsylvania Rules of Civil Procedure, a cause of action arises in the county where the injury occurred and not the county where the alleged negligence occurred. They say this interpretation of the rules is contrary to the policy considerations underlying the rules, frustrates the intent of the legislature, and leads to absurd results.

If there is any basis to affirm a trial court's decision to transfer venue, the decision must stand. Moreover, the standard of review is one of abuse of discretion. An abuse of discretion is shown by a record of misapplication of the law, or judgment that is manifestly unreasonable, or motivated by partiality, prejudice, bias, or ill-will.

*Kring v. University of Pittsburgh,* 829 A.2d 673, 675 (Pa.Super.2003), *appeal denied,* 577 Pa. 689, 844 A.2d 553 (2004) (citations omitted).

¶ 5 The trial court found venue was improper in Luzerne County but proper in Columbia County. Appellants disagree and contend venue is proper in Montour County. Either venue is proper in Columbia County or it is not. *See Kring,* at 676. There is no difference procedurally between a claim that the action is before the wrong tribunal and a claim that the action was brought before a court lacking competence to entertain it. *Id.* If, as appellant alleges, venue in Columbia County is improper, the Court of Common Pleas of Columbia County has no jurisdiction to hear the case. *Id.* Within this factual and legal context, we endeavor to resolve this issue.

¶ 6 This case turns on a determination of the county in which the cause of action arose. While we have no comprehensive definition for the phrase "cause of action," Pennsylvania courts have defined it to mean the negligent act or omission, as opposed to the injury which flows from the tortious conduct, in cases involving claims based upon negligence. *Sunderland v. R.A. Barlow Homebuilders,* 791 A.2d 384, 390 (Pa.Super.2002) *affirmed,* 576 Pa. 22, 838 A.2d 662 (2003), *citing Kuisis v. Baldwin–Lima–Hamilton Corp.,* 457 Pa. 321, 325–326, n. 7, 319 A.2d 914, 918 n. 7 (1974).[5] For the reasons expressed below, we agree that definition is applicable here.

¶ 7 We first consider the recent holding of *Olshan v. Tenet Health System City Ave., LLC,* 849 A.2d 1214 (Pa.Super.2004). The underlying claim in *Olshan* was that after a mammogram was taken and read in Montgomery County, a cancerous lesion was missed, resulting in a much more serious cancer when ultimately diagnosed, and thereby reducing the plaintiff's chance for survival. The plaintiff initiated the action in Philadelphia County. The corporate defendants in Philadelphia County were sued either because the Montgomery County physicians and facilities were agents of the Philadelphia corporate defendants or because of corporate liability in failing to retain competent physicians, inadequate rules and policies, and failure of supervision.

¶ 8 In *Olshan,* we noted that the rules for venue for a medical negligence action are found at Pa.R.C.P. 1006 and that these rules were amended along with the statu-

---

**5.** *See also, Boarts v. McCord,* 354 Pa.Super. 96, 511 A.2d 204, 207 (1986); *Saracina v. Cotoia,* 417 Pa. 80, 85, 208 A.2d 764, 767 (1965); *Shenandoah Borough v. Philadelphia,* 367 Pa. 180, 79 A.2d 433 (1951), *overruled by Kuisis v. Baldwin–Lima–Hamilton Corp.,* 457 Pa. 321, 319 A.2d 914 (1974), on the basis that the *Shenandoah* Court stated there was no difficulty in defining the phrase "cause of action" whereas the *Kuisis* Court recognized that no comprehensive definition for the phrase exists; *Shaffer v. DOT,* 842 A.2d 989, 993 (Pa.Cmwlth.2004).

tory changes embodied in the MCARE Act[6] and reflect the same intent as the General Assembly. We further noted that the venue rules refer back to specific sections of MCARE for both definitions and general rules. Thus, we explained the Supreme Court, which has sole responsibility for the promulgation of rules regarding venue, has adopted the same rules as those promulgated by the General Assembly. *Id.*, at 1216.

¶ 9 Rule 1006, as noted previously, provides that, "a medical professional liability action may be brought against a health care provider for a medical professional liability claim only in a county in which the cause of action arose." Pa.R.C.P. 1006(a.1). Rule 1006 refers us to 42 Pa. C.S.A. § 5101.1(c) for the definition of "medical professional liability claim," which is defined as,

> [a]ny claim seeking the recovery of damages or loss from a health care provider arising out of any tort or breach of contract causing injury or death resulting from the *furnishing of health care services* which were or should have been provided.

42 Pa.C.S.A. § 5101.1(c) (emphasis supplied). Given this definition, we held in *Olshan* that since all the medical care was *furnished* to the patient in Montgomery County, the cause of action, i.e. failure to diagnose, arose in Montgomery County. Venue was not proper in Philadelphia, we concluded, because no health care was "furnished" to the patient there.

¶ 10 Although *Olshan* does not directly answer the question before us, we believe its holding is instructive, i.e. under Rule 1006(a.1), the cause of action arose in the county in which medical care was furnished to the patient. Here, medical care

was furnished to appellee Peters in Montour County.

¶ 11 In *Olshan*, we also considered the expressed legislative intent to reform venue rules.

> In accordance with section 514(a) of the act of March 20, 2002 (P.L. 154, No. 13), known as the Medical Care Availability and Reduction of Error (MCARE) Act, and as a matter of public policy, the General Assembly further declares the need to change the venue requirements for medical professional liability actions.

42 Pa.C.S.A. § 5101.1(a), Declaration of policy.

> The General Assembly further recognizes that recent changes in the health care delivery system have necessitated a revamping of the corporate structure for various medical facilities and hospitals across this Commonwealth. This has unduly expanded the reach and scope of existing venue rules. Training of new physicians in many geographic regions has also been severely restricted by the resultant expansion of venue applicability rules. These physicians and health care institutions are essential to maintaining the high quality of health care that our citizens have come to expect.

40 P.S. § 1303.514(a), Declaration of policy. Considering this expressed intent to circumscribe venue rules in medical liability actions, we concluded that the new venue rules provided in Section 5101.1 and Pa.R.C.P. 1006 sought to alleviate the situation where venue is greatly expanded due to the new corporate structure of health care, and sought to limit venue "to the location of the alleged negligent care." *Olshan, supra*, at 1218. In the context of this reform, we again limit venue to the

---

**6.** Medical Care Availability and Reduction of Error (MCARE) Act, 40 P.S. §§ 1303.101 et seq.

location of the alleged negligent care by declining to expand venue to include any county where a patient happens to ingest a medication she alleges is negligently prescribed by a physician.

¶ 12 Our conclusion is further bolstered by our holding in *Sunderland, supra.* In *Sunderland,* we were faced with the question of whether, when a decedent is fatally injured in one county but dies in another, a wrongful death claim arises in the county of the initial tortious conduct or in the county of death. The plaintiffs brought the case in the county where the decedent died, but the trial court found venue was improper there and transferred the underlying action to the county where the wrongful act occurred. The plaintiffs appealed and this Court affirmed.

¶ 13 In so concluding, we considered Rules 1006 and 2179. We also considered the language of Pennsylvania's Wrongful Death Act,[7] which was substantially similar to the language of our former wrongful death statute, which the Pennsylvania Supreme Court had previously interpreted to provide that it is the tortious act or negligence of the wrongdoer, and not the consequence, i.e. death, that is the basis or the ground of action. *See id., citing Centofanti v. Pennsylvania R. Co.,* 244, Pa. 255, 90 A. 558 (1914). Importantly too, the *Sunderland* Court noted that a wrongful death

action is simply derivative of the injury which would have supported the decedent's own cause of action. *Id.,* at 390.

■ ¶ 14 *Sunderland* dictates that if Jean Peters had died in Columbia County as a result of her allergic reaction to the Prednisone which was prescribed to her in Montour County, for the purposes of venue, a cause of action for wrongful death would have arisen in Montour County, i.e. the situs of the alleged negligent act, the prescription of Prednisone. It is illogical to suggest that since the allergic reaction was not fatal, the cause of action arose in Columbia County, where she suffered the injury. Again, the cause of action for wrongful death is derivative of the injury which would have supported the decedent's own cause of action. Moreover, our law is clear that "[t]he primary element in any negligence action is that the defendant owes a duty of care to the plaintiff. It has long been hornbook law that a duty arises only *when one engages in conduct* which foreseeably creates an unreasonable risk of harm to others." *R.W. v. Manzek,* 838 A.2d 801, 807 (Pa.Super.2003) (emphasis supplied, citations omitted). Accordingly, although we recognize that the complainant must suffer actual loss or damage in order to sustain a cause of action for negligence,[8] it is logical that the basis of a cause of action in negligence is also the primary

7. 42 Pa.C.S.A. § 8301, Death Action, provides:

(a) General Rule.—An action may be brought, under procedures prescribed by general rules, to recover damages for the death of an individual *caused by the wrongful act or neglect or unlawful violence or negligence of another ...*

Id. (emphasis supplied).

8. The elements necessary to plead an action in negligence are:

(1) the existence of a duty or obligation recognized by law, requiring the actor to

conform to a certain standard of conduct; (2) a failure on the part of the defendant to conform to that duty, or a breach thereof; (3) a causal connection between the defendant's breach and the resulting injury; and (4) actual loss or damage suffered by the complainant.

*R.W. v. Manzek,* 838 A.2d 801, n. 8 (Pa.Super.2003); *see also, Toogood v. Owen J. Rogal, D.D.S., P.C.,* 573 Pa. 245, 254, 824 A.2d 1140, 1145 (2003) (stating that when a plaintiff's medical malpractice claim sounds in negligence, the elements of the plaintiff's case are the same as those in ordinary negligence actions).

element necessary in order to sustain a cause of action, i.e. the tortious act of the wrongdoer, and not the consequence.

¶ 15 We must also point out that we find this case to be distinguishable from both *Openbrier v. General Mills, Inc.*, 340 Pa. 167, 16 A.2d 379 (1940) and *Emert v. Larami Corp.*, 414 Pa. 396, 200 A.2d 901 (1964). In *Openbrier* the plaintiff bought a bag of flour from a grocer in Washington County. The flour was manufactured by the defendant corporation whose place of business was in Buffalo, New York. The plaintiff ingested a piece of glass that was in the bag and instituted the suit for personal injury in Washington County. The sheriff of Washington County deputized the sheriff of Dauphin County to serve the writ under Section 1011 of the Business Corporation Law of 1933, P.L. 364, 15 P.S. § 2522-1011, which provided that process might be issued against a foreign business corporation "in the county in which the right of action arose." Our Supreme Court reasoned that to constitute a tort there must be an injury; mere negligence establishes no right of action. It therefore concluded a personal injury cause of action arises where the injury is inflicted and not where the negligent acts leading to it are committed. Since the cause of action arose in the forum county, i.e. Washington County, the service of process was valid. *Id.*

¶ 16 *Emert* involved a personal injury action arising from the use of a defectively manufactured or designed slingshot. At issue was the validity of the deputized service of a writ of summons. The plaintiffs initiated the action in Philadelphia County, where the defendant, a manufacturer, wholesaler and distributor of toys, had its place of business, and where the alleged negligence occurred. The Court analyzed the former Pa.R.C.P. 1043 which provided:

[w]hen an action against an individual is commenced in the county *where the cause of action arose,* the plaintiff shall have the right of service in any other county by having the sheriff of the county in which the action was commenced deputize the sheriff of the other county where service may be had.

*Id.,* at 398–399, 200 A.2d at 902 (quotation marks omitted, emphasis in original). The Court quoted *Openbrier,* and concluded the cause of action arose in the county where the tort was committed by the infliction of injury, i.e. at plaintiffs' residence in Bucks County. *Id.* Since the cause of action arose in Bucks County, not Philadelphia County, the service by deputization of the sheriff of Bucks County by the sheriff of Philadelphia County was invalid under the applicable rule. *Id.*

¶ 17 These two cases are distinguishable from the instant case in that they involve personal service not venue, and also in that they involve manufacturers and distributors of products who should be aware their products will reach distant markets and that may be subject to service in those areas. Here, however, appellee Peters sought treatment from physicians in Montour County. It simply does not comport with our sense of fairness to hold that a person could seek medical attention from a physician in one county, receive a prescription from that physician, and then go to any county to ingest that medication, and the physician would be subject to venue in whatever county that happens to be. If Peters had traveled to Allegheny County on a shopping trip for instance, and ingested the medication there, it simply makes no sense to say that the cause of action arose in Allegheny County and therefore it is the only proper venue pursuant to Pa.R.C.P. 1006. Pennsylvania Rule of Civil Procedure 128, Presumptions in Ascertaining the Intent of the Supreme Court, (a) provides "[t]hat the Supreme

Court does not intend a result that is absurd, impossible of execution or unreasonable." We conclude that we would reach an unreasonable result if we were to affirm the trial court's decision in this matter.[9]

¶ 18 In accordance with the above, since the alleged negligent acts at issue here, i.e. prescription of the drug Prednisone to Jean Peters, occurred in Montour County, venue properly lies there.

¶ 19 Order vacated; venue transferred to Montour County and case remanded for proceedings in accordance with this Opinion.

¶ 20 Jurisdiction relinquished.

---

9. We also note that Pa.R.C.P. 2179(a)(4), which provides that a personal action against a corporation or similar entity may be brought "in a county where a transaction or occurrence took place out of which the cause of action arose," is a very broad venue provision, but is nevertheless intended to ensure that the county selected for suit bears a substantial relationship to the controversy. *Purcell v. Bryn Mawr Hosp.*, 525 Pa. 237, 579 A.2d 1282 (1990), *citing County Construction Co. v. Livengood Construction Corp.*, 393 Pa. 39, 142 A.2d 9 (1958). Rule 1006(a.1), in contrast, is a very narrow venue provision in that it provides for venue in medical professional liability actions *only* in the county in which the cause of action arose. We will not interpret it to provide for venue in a county which does not bear a substantial relationship to the case, but rather may have nothing to do with it except happentance.