363 A.2d 1172

Leo LENKIEWICZ and Loretta Lenkiewicz, his wife,

v.

Albert L. LANGE, d/b/a Albert Lange Studios,
Original Defendant,

v.

HUPP CORPORATION et al., Additional Defendants.

Appeal of Loretta LENKIEWICZ.

Superior Court of Pennsylvania.

Sept. 27, 1976.

Hymen Schlesinger, Pittsburgh, for appellant.

William E. Hoey, Donald W. Bebenek, Arthur R. Gorr, Pittsburgh, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

PRICE, Judge.

The Pittsburgh Press Club operates a restaurant at 300 Sixth Avenue, Allegheny County, Pittsburgh, Penn-

sylvania. On February 9, 1971, plaintiff-appellant Loretta Lenkiewicz, employed by the Press Club as a waitress, was injured when a room divider collapsed upon her during the course of her employment. Appellant and her husband, plaintiff-appellant Leo Lenkiewicz, filed a complaint in trespass against defendant-appellee Albert L. Lange, the alleged seller and installer of the room divider, basing liability on theories of breach of warranty, negligence, and strict liability under *Restatement (Second) of Torts* § 402A (1965). Lange then joined Hupp Corporation and Richards-Wilcox Manufacturing Company, the designers and sellers of the room divider, Oliver Tyrone Corporation, the lessor of the room divider, William B. Simboli, t/a/d/b/a William B. Simboli and Associates, the installer of the room divider, Landau Brothers Building Company, the company that built the Press Club,[1] and the Press Club as additional defendants.

On May 31, 1974, a jury awarded a verdict of $100,000 for appellants against the Press Club and did not mention Lange and the other additional defendants. The lower court molded the verdict in favor of Lange and the other additional defendants. Motions for a new trial and judgment N.O.V. were denied, and judgment was entered on the verdicts. We affirm.

First, appellants contend that the lower court erred in failing to permit the issues of strict liability and breach of warranty to be considered by the jury. The lower court declined to instruct the jury on these theories because of appellants' failure to introduce evidence of a defect in the room divider.

In 1966, the Press Club moved from 206 Sixth Avenue to its present location. At that time, Mr. R. W. Duhon, general manager of the Press Club, decided that a portable room divider was needed for one of the rooms. Pri-

---

1. Prior to trial, the lower court granted a motion for summary judgment in favor of Landau Brothers Building Company. That order is not a subject of this appeal.

or to this time, the Press Club had done all of its buying through Lange. Therefore, Duhon told Lange to determine the feasibility of obtaining Air Walls [2] for the Press Club. From 1966 until the day of the accident, the panels were frequently erected and lowered, often as much as three or four times per week.

■■ It is well settled that in order to establish a cause of action for breach of warranty or for strict liability under § 402A, the plaintiff must prove that the product was defective at the time that the seller delivered it to the buyer, and that the defect caused the plaintiff's harm. *Berkebile v. Brantly Helicopter Corp.*, 462 Pa. 83, 337 A. 2d 893 (1975); *Kuisis v. Baldwin-Lima-Hamilton Corp.*, 457 Pa. 321, 319 A.2d 914 (1974); *Oehler v. Davis*, 223 Pa.Super. 333, 298 A.2d 895 (1972). The plaintiff may prove the existence of a defect circumstantially, by showing that the product malfunctioned. *D'Antona v. Hampton Grinding Wheel Co.*, 225 Pa.Super. 120, 310 A.2d 307 (1973); *MacDougall v. Ford Motor Co.*, 214 Pa.Super. 384, 257 A.2d 676 (1969).

In this case, however, appellants have not met their burden of proof. When specifically questioned about what possible malfunction could have occurred, appellants' expert replied that the air valves should have been equipped with pressure gauges, thereby facilitating determination of insufficient pressure. Assuming, *arguendo,* that this would be a defect for purposes of § 402A,[3] ap-

---

2. "Air Walls" are portable, waterproof panels, approximately 48 inches long and 109 inches high. They may be joined to each other at either end, thus creating a wall of variable length. The Press Club's wall required nine such panels. At the top of each panel is a four inch cap that spans the length of the panel. Injecting air into a valve on the side of the panel causes the cap to rise up to two and one-half inches. The wall is held upright by the pneumatic pressure exerted through the cap against the ceiling. To remove the wall, the air is released, lowering the cap from the ceiling.

3. In *Berkebile v. Brantly Helicopter Corp.*, 462 Pa. 83, 337 A.2d 893 (1975), our supreme court held that "[t]he seller must provide with the product every element necessary to make it safe for use." 462 Pa. at 100, 337 A.2d at 902.

pellants have failed to prove that the defect was a proximate cause of the injuries.

The evidence at trial indicated two other possible explanations for the collapse of the wall, both of which are inconsistent with the theory of a defect. William P. Hankes, district manager for Richards-Wilcox Manufacturing Company, testified that his measurements revealed that the floor of the Press Club had fallen several inches toward the center of the room. This evidence was corroborated by testimony that gaps of light could be seen between the ceiling and the wall towards the center, but not at the ends. Thus, the sinking of the floor is one possible explanation for the wall's collapse which has not been refuted by appellant.

In addition, appellants' own expert testified that the two and one-half inch travel capability of the caps was not enough to insure the stability of the panels. Neither of these explanations indicates a defect in the panels.

■■ We do not hold that a plaintiff must refute all possible explanations offered by a defendant. But where an explanation consistent with the existence of a defect is as probable as an explanation inconsistent with the existence of a defect, the plaintiff cannot be held to have met his burden. A jury may not be permitted to speculate.

> "[I]t is not necessary that plaintiff prove with mathematical exactness that the accident could only have been caused in one manner to the exclusion of all other possibilities . . . but he must eliminate those other causes, if any, as were fairly suggested by the evidence . . .. And it is the duty of the trial court to determine whether or not this requirement has been met in the first instance before the issue can be submitted to the jury . . .." *Cuthbert v. Philadelphia,* 417 Pa. 610, 614–15, 209 A.2d 261, 263–64 (1965) (citations omitted).

■■ Appellants' second contention is that the lower court erred in permitting each additional defendant to exercise four peremptory challenges, instead of requiring the four peremptory challenges to be divided among them. The Act of March 29, 1860, P.L. 344, § 1 (17 P.S. § 1171), allots four peremptory challenges to the plaintiff and four challenges to the defendant. Pennsylvania appellate courts have consistently interpreted that statute as allowing four challenges to each class of litigants with an antagonistic interest. Additional defendants have interests antagonistic to each other. *Moffatt v. Carbondale,* 314 Pa. 31, 170 A. 269 (1934); *Shaw v. Megargee,* 307 Pa. 447, 161 A. 546 (1932); *Timlin v. Scranton (No. 1),* 139 Pa.Super. 503, 12 A.2d 502 (1940). *See also Annot.,* 32 A.L.R.3d 747 (1970).

■ Third, appellants allege that the lower court erred in refusing to allow appellants to inquire into the education of prospective jurors on voir dire. The sole purpose of voir dire examinations is to obtain a competent, fair, and impartial jury. Within that guideline, the scope of voir dire rests within the sound discretion of the trial judge. *Commonwealth v. Brown,* 464 Pa. 625, 347 A.2d 716 (1975); *Bentivoglio v. Ralston,* 447 Pa. 24, 288 A.2d 745 (1972); *Commonwealth v. Foster,* 221 Pa. Super. 426, 293 A.2d 94 (1972). In this case, it does not appear that the education of the jurors was relevant to a finding of competence, fairness, or impartiality. The evidence presented and the issues to be decided were not unduly complicated. Thus, the lower court did not abuse its discretion in controlling voir dire.

Finally, appellants allege that the lower court erred in dismissing appellants' request for admissions. As of August 14, 1973, trial of the case had been scheduled for January 7, 1974. On December 5, 1973, appellants filed a list of ninety-seven requested admissions. From December 10 through December 18, 1973, the appellees filed objections to the request, alleging mainly that the request

was unduly burdensome in light of the time limitations, and that it was an attempt at unauthorized discovery. After argument, the request for admissions was dismissed by the Honorable John J. McLean, Jr.

Pa.R.C.P. No. 4014 provides:

"(a) A party may serve upon an adverse party a written request for the admission by him, for the purpose of the pending action only, of the truth of any relevant matters of fact set forth in the request or of the genuineness of any writing, document or record, a copy of which is attached to the request, or incorporated therein by reference as provided by Rule 1019(g), or the truth of any fact relating to its authenticity, correctness, execution, delivery, mailing or receipt.

(b) A matter of which an admission is requested is admitted unless the adverse party within ten (10) days after service of the request serves upon the requesting party

(1) a sworn denial or explanation why he cannot admit or deny the matter, or

(2) objections to the relevance or competence of the matter or the scope of the request."

The rule provides only three grounds for objection: relevancy, competency, and scope of the request. As noted in 4 *Goodrich-Amram Pennsylvania Procedural Rules Service with Forms* § 4014(b)–11 (1954), the bad faith and unnecessary burdens exceptions contained in Pa.R.C.P. No. 4011 do not seem to apply to Rule 4014. On the other hand, the treatise notes that there should be an exception for multifarious or dilatory requests. It would seem that a request for multitudinous admissions served shortly before trial is highly unfair, and, therefore, objectionable. Of course a party could always summarily deny any request for an admission that he did not have time to study. However, such an attitude does not comport with the spirit of good faith inherent in the

Pennsylvania Rules of Civil Procedure, and is not an attitude which this court seeks to encourage. Therefore, we believe that a list of requests for admissions may properly be dismissed where it is determined that it places too great a burden on adverse parties. Such a determination, involving as it does, a weighing of factors such as time, reasonableness, and prejudice, is properly left to the sound discretion of the judge who hears the objections. In this case, we cannot say that the lower court abused its discretion.

The judgment of the lower court is affirmed.

HOFFMAN, J., files a concurring opinion in which SPAETH, J., joins.

WATKINS, President Judge, and JACOBS, J., dissent.

HOFFMAN, Judge (concurring).

I concur in the Majority's disposition of the instant case. Nonetheless, I cannot join its opinion because I believe that it has applied an incorrect standard to determine whether points for charge on breach of warranty and strict liability under § 402A *Restatement (Second) of Torts* (1965), should have been submitted to the jury.

The lower court refused to charge the jury on the § 402A and breach of warranty issues. The Majority affirms and holds that "where an explanation consistent with the existence of a defect is as probable as an explanation inconsistent with the existence of a defect, the plaintiff cannot be held to have met his burden." (Slip opinion at 4). I cannot agree with the application of this standard to determine whether an issue should be submitted to the jury.

In an action for breach of warranty or strict liability under § 402A the plaintiff must establish a prima facie case in order to have it submitted to the jury. "Strict lia-

bility [under 402A] requires, in substance, only two elements of requisite proof: the need to prove that the product was defective and the need to prove that the defect was a proximate cause of the plaintiff's injuries." *Berkebile v. Brantly Helicopter Corp.*, 462 Pa. 83, 337 A.2d 893, 898 (1975). However, "[i]t is not necessary, under Pennsylvania law, that every fact or circumstance point unerringly to liability; it is enough that there be sufficient facts for the jury to say reasonably that the preponderance favors liability. . . . Also, it is beyond the power of the court to say whether two or more reasonable inferences are 'equal'. . . . The facts are for the jury in any case whether based upon direct or circumstantial evidence where a reasonable conclusion can be arrived at which would place liability on the defendant. It is the duty of plaintiff to produce substantial evidence which, if believed, warrants the verdict he seeks." *Smith v. Bell Telephone Co. of Pennsylvania*, 397 Pa. 134, 138, 153 A.2d 477, 480 (1959). Additionally, "[i]n order to avoid a nonsuit or a judgment n. o. v., it was not the plaintiff's duty to negate all other possible causes of the accident." *Jones v. Treegoob*, 433 Pa. 225, 230, 249 A.2d 352, 355 (1969). On the other hand, a Plaintiff must rebut such reasonable secondary causes as are fairly suggested by the evidence. *MacDougall v. Ford Motor Co.*, 214 Pa. Super. 384, 257 A.2d 676 (1969).

Thus, it is clear from Pennsylvania case law that the plaintiff in a breach of warranty of § 402A case need only prove a prima facie case to reach the jury. *Berkebile v. Brantly Helicopter Corp.*, supra. The Majority's standard requires a greater degree of proof for the plaintiff in the instant case. Its standard would permit the court to decide, as a matter of law, issues properly left for the jury. That is, where the probability of the existence of a defect is just as likely as its nonexistence, the court could, under the Majority's holding, decide that no defect exists, and refuse to charge the jury.

In withholding an issue from a jury by refusing a plaintiff's points for charge, a judge may not weigh one probability against another; if two or more reasonable inferences are permissible, the court must offer the point for charge and allow the jury to resolve the issue. *Rohay v. Breyak,* 409 Pa. 568, 186 A.2d 913, 915 (1963). Only if the evidence leaves no doubt does the issue become a matter of law for the judge. *Rohay v. Breyak,* supra at 57, n. 1, 86 A.2d at 915, n. 1.

In the instant case, the trial judge considered that there was no rational basis upon which the jury could find a breach of warranty or a violation of § 402A. An examination of the evidence reveals that he is correct. The appellant failed to show any causal connection between any act or omission by appellee and the accident; nor did appellant show that a defect existed at the time of sale which occurred four-and-one-half-years prior to the accident. Further, appellant failed to rebut reasonable secondary causes suggested by the evidence such as the deflection of the floor, worn needle valves, or misuse of the walls by the Press Club employees. Also, on cross-examination, appellant's expert stated that he had no idea what caused the wall to collapse. Based upon appellant's failure to establish a prima facie case under breach of warranty or § 402A, the evidence was insufficient to charge the jury on those points. The lower court's decision should be affirmed. Therefore, I concur in the result reached by the Majority.

SPAETH, J., joins in this concurring opinion.