SOCHANSKI, Stanley J., Appellant,

v.

SEARS, ROEBUCK AND CO. et al., The Goodyear Tire & Rubber Co.

v.

John F. SOLOMON, Jr., Palmer Tire Company, Geneva Metal Wheels Co.

No. 79–1963.

United States Court of Appeals, Third Circuit.

Argued Jan. 17, 1980.

Decided May 2, 1980.

August J. Lacko, Lyons & Lacko, Philadelphia, Pa., for appellant.

John J. O'Brien, Jr., O'Brien & O'Brien Associates, Philadelphia, Pa., for appellee.

Before HUNTER, HIGGINBOTHAM and SLOVITER, Circuit Judges.

## OPINION OF THE COURT

A. LEON HIGGINBOTHAM, Jr., Circuit Judge.

Stanley Sochanski brought suit in the federal district court under diversity jurisdiction alleging that he had been injured while repairing a defective tire of a garden cart sold by Sears, Roebuck & Co. (Sears). A jury awarded damages to Sochanski but the district court granted a motion for judgment n.o.v. stating that Sochanski had not met the burden of proof which Pennsylvania law required to prove that the tire was defective. We disagree and will reverse so that judgment may be entered for the plaintiff.

### I.

Sochanski was injured while attempting to repair a tire from a garden cart sold by

Sears, Roebuck & Co. The tire was manufactured by Goodyear Tire and Rubber Co. (Goodyear). The tire was mounted onto a metal frame (the wheel). This wheel unit (the tire and wheel) was purchased by the Palsgrove Manufacturing Co., which used the unit to make the garden cart, which was sold to Sears which, in turn, sold the cart to John Solomon in April, 1971.

In July, 1974 Solomon noticed that one of the garden cart's tires was losing air and took the tire to the Palmer Tire Co. (Palmer) to have an inner tube inserted. The tire was originally a tubeless tire; Solomon felt that an inner tube would stop the leakage problem. Sochanski, an employee of Palmer, was assigned the repair job. At trial he testified about how he had tried to repair the tire. He stated that he first removed the tire from the wheel so that he could remove the valve stem from the wheel because the inner tube had its own valve. After removing the original valve stem, he put one side of the tire onto the wheel, pulling it over the edge of the wheel (flange) with a small crowbar specially designed for that purpose. He explained that the edge of the tire (the bead) was built up slightly so that it would fit snugly against the flange. (Goodyear's expert explained that the bead is constructed of steel wires). He also explained that the edge of the tire was slightly smaller than the wheel on which it was to be placed so that the tire would lie taut against the flange when stretched to fit on the wheel.

After removing the tire he fit the inner tube on the wheel, checked the valve stem, and inflated the inner tube slightly. He explained that he inflated the tube so it would mold onto the wheel and thus not become folded or twisted. Next he lubricated the other side of the tire so that it could be put onto the wheel easily and pulled that side over the flange with the crowbars. Thus both sides were fastened onto the wheel within the two flanges. He then inflated the inner tube to fifteen pounds of air pressure and stopped to check the tire. He noticed that one edge of the tire was not securely against the flange. Although this was unusual, he felt that the

bead would fit more securely once the tire was fully inflated. He then pumped the tire to the required thirty-four pounds of pressure. Again, he noticed that the tire was not securely against the flange. He testified that he figured "something else was wrong" and decided to take the unit apart to try a second time. As he leaned toward the tire to take it apart, the tire burst. The unit shot upwards and struck him in the head rendering him unconscious. Sochanski stated that the procedure he had used to fix the tire was the procedure which was regularly followed at Palmer. Edward Ortman, a fellow employee, concurred. As a result of the accident he suffered a concussion, fracture of the facial bone, spinal fluid rhinorrhea, and spinal meningitis. He was permanently deformed. He has lost his sense of smell and suffers a diminution of his IQ.

Sochanski brought suit, alleging that the tire was defective when Goodyear sold the tire to Palsgrove and through the chain of sales described above, Sears, the final seller, had sold a defective tire to Solomon and the defect had caused Sochanski's injuries. He asserted that under section 402A of the Restatement (Second) of Torts (1965) Sears and Goodyear were strictly liable for his injuries. At trial he attempted to call Vassilis Morfopoulos as an expert witness. He asserts here that Morfopoulos is an expert on tire safety and would have testified that the tire and the wheel were mismatched and that this mismatch created strain on the tire causing it to pop off the wheel. The district court did not permit Morfopoulos to testify on the ground that Morfopoulos was not qualified.

The jury found, in response to special interrogatories, that the tire was defective when it left Goodyear's hands, that the defect rendered it unreasonably dangerous, that the wheel unit was defective when it was sold by Sears, that the wheel unit was unreasonably dangerous, and that the defect was the proximate cause of Sochanski's injuries. The jury awarded $395,000 in damages. In response to a motion for judgment n.o.v. the district court set aside the

jury's verdict. The court held that under section 402A a plaintiff is required to negate abnormal use and reasonable secondary causes, and that the plaintiff's proof had fallen short of negating reasonable secondary causes.

Sochanski appeals the district court's decision. He argues that the district court erred as a matter of law because he had met his burden of proof and that the district court abused its discretion by not permitting one of Sochanski's expert witnesses to testify.[1]

## II.

Section 402A of the Restatement (Second) of Torts provides for strict liability of a seller when a defective product he has sold is the proximate cause of a user's injuries.

Specifically, it states:

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

■ This section has been adopted by the Pennsylvania courts, *Webb v. Zern*, 422 Pa. 424, 220 A.2d 853 (1966), and applied a number of times. *E. g., Azzarello v. Black Brothers Co., Inc.*, 480 Pa. 547, 391 A.2d 1020 (1975); *Berkebile v. Brantly Helicopter Corp.*, 462 Pa. 83, 337 A.2d 893 (1975);

*Cornell Drilling Co. v. Ford Motor Co.*, 241 Pa.Super. 129, 359 A.2d 822 (1976).

■ A plaintiff may prevail under section 402A under a "malfunction" theory. Under the malfunction theory, the plaintiff need not prove the existence of a specific defect, if he can show that the product malfunctioned in the absence of abnormal use and reasonable secondary causes. *Knight v. Otis Elevator Co.*, 596 F.2d 84, 89 (3d Cir. 1979).

■ Sears asserts that Sochanski misaligned the tire with the wheel, causing the tube to be pinched and thus explode, relying on the testimony of Goodyear's expert witness, Robert Hill. The district court held that because Hill's testimony on the possible mis-alignment showed that the accident might have been caused by a "reasonable secondary cause" and the plaintiff did not negate his mis-alignment theory, that the plaintiff had not met his burden of proof. We do not agree. Sears' theory on mis-alignment is based solely on the testimony of Hill. Hill stated that it was his opinion that the tire had been mis-aligned and that he based his conclusion on marks he found on the wheel. He asserted that the marks had been caused in the accident and they showed that the tire had been mis-aligned. During cross-examination Hill, however, admitted that he was not certain of how the marks were made and that they might have been made in the manufacturing process. The jury could have reasonably disregarded this portion of Hill's testimony because of this challenge.

The district court also relied on evidence which revealed that the inner tube ruptured on the bottom side causing the wheel unit to shoot upward. The court suggested that the rupturing may have been "the sole cause of the accident" and that the plaintiff had not refuted this possible cause. 477 F.Supp. 316, 320 (E.D.Pa.1979). Hill, however, testified that the rupture on the tube merely controlled the direction of the wheel

---

1. During the pendency of the appeal, Goodyear reached a settlement with Sochanski: We express no opinion about the effect of the settlement on Sears because neither Sears, Goodyear nor Sochanski has presented the issue to us.

unit and that "beyond that it ha[d] no significance." Thus, the jury could have concluded that the tube was not the cause of the accident.[2]

■ Sochanski's testimony does not suggest that he mis-aligned the tire and it is sufficient to support the jury's conclusion that he was repairing the tire properly. We note that the district court suggested that Sochanski admitted he did the repair incorrectly, stating, "Plaintiff also decided to take the wheel unit apart again because 'maybe there will be something else wrong.' " *Id.* at 320 n.7. It is, however, possible that the jury interpreted this statement by Sochanski as a repetition of his earlier comment, "So I figured you know, there is something else wrong *with the tire.*" (emphasis added). Further, the jury may have been persuaded that the tire was defective because it failed to pull taut against the flange. Sochanski testified that the bead normally would have snapped against the flange after he inflated the tire to fifteen pounds of pressure. Thus, there was evidence from which the jury could have concluded that the plaintiff repaired the tire properly and it could have rejected the evidence on "reasonable secondary causes."

This evidence is sufficient to meet the burden of proof required by Pennsylvania law. In *Bialek v. Pittsburgh Brewing Co.,* 430 Pa. 176, 242 A.2d 231 (1968), the Supreme Court of Pennsylvania held that the testimony of the plaintiff and another witness which established that a beer bottle that had been properly stored had exploded without any apparent causation was enough to make the issue of a defect a jury question. In *Bialek* the plaintiff had called an expert witness to testify on a possible defect. The court did not find the expert's testimony critical to its holding. In *Agostino v. Rockwell Manufacturing Co.,* 236 Pa. Super. 434, 345 A.2d 735 (1975), *allocatur denied,* Nov. 26, 1975, the court held that there was sufficient evidence for the jury to

find the existence of a defect in an electric saw solely on the basis of the plaintiff's testimony that the automatic guard on the saw failed to operate. The court sustained the jury's verdict for the plaintiff, even though no expert witness had testified. *Accord McCann v. Atlas Supply Co.,* 325 F.Supp. 701 (W.D.Pa.1971) (then District Judge Weis).

In *Kuisis v. Baldwin-Lima-Hamilton Corp.,* 457 Pa. 321, 319 A.2d 914 (1974), on which the district court relied, the plaintiff attempted to proceed under the malfunction theory when he was injured by a malfunctioning crane. Reversing the lower court, the Supreme Court stated:

> The questions when and where a defect originated should be left to the finder of fact so long as "reasonable and well balanced minds [could] be satisfied from the evidence adduced that the defective condition existed when the [product] was delivered [citations omitted]". *Greco v. Bucciconi Engineering Co.,* 407 F.2d 87, 90 (3rd Cir. 1969), (applying Pennsylvania law); see also *Burbage v. Boiler Engineering & Supply Co.,* 433 Pa. 319, 249 A.2d 563 (1969). On the other hand, "the jury may not be permitted to reach its verdict merely on the basis of speculation or conjecture, but  . . .  there must be evidence upon which logically its conclusions may be based [citations omitted]". *Smith v. Bell Telephone Co.,* 397 Pa. 134, 138, 153 A.2d 477, 479 (1959).

319 A.2d at 922. The basis for the court's decision in *Kuisis* was the plaintiff's failure to prove that the crane had remained substantially unchanged after it left the manufacturer's hands. The crane was first a shovel, then converted into a dragline, and then into a crane. It was twenty years old and had been subject to "the vicissitudes of over twenty years of rugged use." *Id.*

We do not agree that Sochanski's claim is similarly defective, although Sears argues that the district court's order may be sustained on that basis. First, Hill testified

**2.** Sears also asserts that Sochanski did not meet his burden of proof on proximate cause because he did not negate the possibility that

the tube was defective. As we have noted, Goodyear's expert testified that the tube was not a material factor in the accident.

that the explosion was not caused by either the insertion of the inner tube or any scars present on the tire. He described the tire as close to new and showing very little wear and tear.

Second, the plaintiff presented evidence at trial which showed the cart had not been misused or even put to significant use. Solomon, the owner, testified that the cart had been used only seasonally to transport leaves, grass and firewood and that it had been stored indoors. As the *Kuisis* court held:

> The age of an allegedly defective [condition] must be considered in light of its expected useful life and the stress to which it has been subjected. In most cases, the weighing of these factors should be left to the finder of fact.

*Id.* at 923.

We therefore conclude that Sochanski has met his burden of proof under Pennsylvania law and that the jury's verdict should not have been disturbed. Because we hold that Sochanski met his burden of proof at trial, we will not reach his second claim that the district court erred by excluding his expert witness.[3]

We will therefore reverse and remand so that the jury's verdict may be reinstated.

---

**3.** In *Knight v. Otis Elevator*, where the trial judge was reversed for preclusion of certain expert testimony, we noted our increasing concern that some trial judges seem to improperly "require an expert in a products liability case to be intimately familiar with all aspects of the total machine rather than the particular part in issue." 596 F.2d at 88. We repeat again here the words of the late Judge Staley in *Trowbridge v. Abrasive Company of Philadelphia*, 190 F.2d 825, 829 n.9 (3d Cir. 1951):

> If we were to declare as a rule of law that one must actually have practical experience in a given industry in order to qualify as an expert in litigation involving its products, we might very well place an onerous burden on plaintiffs in some cases. Where the industry is small and tightly knit, it may be very difficult for the plaintiff to obtain the services of an expert currently employed therein, and it might be equally difficult to find someone who was formerly employed in the industry. But the key experts of an industry would normally be available to the defendant.