Daniel SHERMAN, Administrator of the Estate of Margaret Sherman, Deceased

v.

PURITAN–BENNETT CORPORATION

v.

DELAWARE COUNTY MEMORIAL HOSPITAL

and

Bard-Parker, a division of Becton Dickson & Co.

Civ. A. No. 79–4582.

United States District Court, E. D. Pennsylvania.

Aug. 2, 1982.

Frances E. Shields, Philadelphia, Pa., for plaintiff.

John J. Barrett, Jr., Philadelphia, Pa., for defendant.

## MEMORANDUM and ORDER

SHAPIRO, District Judge.

This products liability action was commenced in state court by Daniel Sherman ("Sherman"), administrator of the estate of his deceased wife, Margaret. Defendant Puritan-Bennett Corporation timely removed the case to this court and subsequently impleaded third-party defendants Delaware County Memorial Hospital ("Hospital") and Bard-Parker, a division of Becton Dickson and Company ("Bard"). Jurisdiction exists by reason of the diverse citizenship of Sherman and Puritan.[1] Pennsylvania law is applicable. Bard has moved for summary judgment on Puritan's third-party claim. For the reasons discussed below, Bard's motion is granted.

On December 19, 1978, Sherman's decedent was admitted to the Hospital with Guillaine-Barre syndrome. She was placed on a Puritan "ventilator" equipped with a Puritan "spirometer" and "spirometer alarm." Puritan's ventilator is a machine which automatically delivers a predetermined volume of gas at a chosen pressure to a patient and measures the gas exhaled by the patient by passing it into a spirometer (a bellows-like device); the spirometer is set

---

1. It is settled in this Circuit that claims against third-party defendants are within the ancillary jurisdiction of the federal courts, and that there need not be an independent jurisdictional basis for such claims if diversity of citizenship exists between the original parties. *Field v. Volkswagenwerk AG*, 626 F.2d 293, 299 (3d Cir. 1980).

to sound an alarm whenever the bellows fails to rise to or fall from a predetermined setting within a predetermined amount of time. Mrs. Sherman was connected to the Puritan ventilator by Bard disposable tubing. The Bard expiratory line or tube connects to a Bard diaphragm cap which connects to a Bard manifold which in turn connects to the ventilator.

It is undisputed that the Bard expiratory tube disconnected from the Bard diaphragm cap between 1:00 P.M. and 1:30 P.M. on December 25, 1978 and that the Puritan spirometer alarm failed to sound. Mrs. Sherman suffered a cardiac arrest that day and died on January 9, 1979.

Sherman's complaint against Puritan contains counts for strict liability and negligence. Puritan impleaded Bard for contribution; it alleged that the Bard tube's defective condition, including improper and inadequate measurement tolerances, caused it to disconnect. Puritan's third-party complaint contains counts for strict liability and breach of warranty.[2] Bard contends that it is entitled to judgment as a matter of law because, on undisputed facts, Puritan cannot establish the existence of any defect in Bard tubing.

Proving some defect in the Bard tubing is essential to Puritan's third-party claim; the issue is whether there can fairly be said to be a dispute with regard to any facts regarding such a defect. *See* Fed.R.Civ.P. 56(c). Doubts as to the existence of genuine issues of fact are to be resolved against the party moving for summary judgment. *Hollinger v. Wagner Mining Equipment Co.*, 667 F.2d 402, 405 (3d Cir. 1981). As non-movant, Puritan is entitled to the benefit of all reasonable inferences from the record. *Id.* However, Puritan must produce "significant probative evidence tending to support the complaint," by way of depositions, interrogatory answers, admissions and affidavits, or suffer entry of summary judgment *Mogul v. General Motors Corp.*, 391 F.Supp. 1305, 1307 (E.D.Pa.), *aff'd mem.*, 527 F.2d 645 (3d Cir. 1976). Conjecture or general denials will not suffice to avoid summary judgment. *United States v. Donlon*, 355 F.Supp. 220, 225 (D.Del.), *aff'd mem.*, 487 F.2d 1395 (3d Cir. 1973); *Tripoli Co. v. Wella Corp.*, 425 F.2d 932, 935 (3d Cir.), *cert. denied*, 400 U.S. 831, 91 S.Ct. 62, 27 L.Ed.2d 62 (1970).

## DISCUSSION

To reach the jury, Puritan must offer evidence that the Bard tube was defective and that the defect was a proximate cause of Mrs. Sherman's death.[3] *See Berkebile v. Brantly Helicopter Corp.*, 462 Pa. 83, 337 A.2d 893, 898 (1975). The Bard tube in use at the time of the contested incident was thrown out, so there is no way to establish directly that the tubing in use was defective.

Direct evidence of a particular defective condition or expert testimony about a specific defect is "helpful" to a plaintiff but not essential in a strict liability case. *Cornell Drilling Co. v. Ford Motor Co.*, 241 Pa.Super.Ct. 129, 359 A.2d 822, 825 (1976). Puritan may prevail, in the absence of independent proof of a defect, if it can prove that the product malfunctioned in the absence of abnormal use and reasonable secondary causes. *Sochanski v. Sears, Roebuck & Co.*, 621 F.2d 67, 69 (3d Cir. 1980); *Knight v. Otis Elevator Co.*, 596 F.2d 84, 89 (3d Cir. 1979); *MacDougall v. Ford Motor Co.*, 214 Pa.Super.Ct. 384, 257 A.2d 676, 680 (1969) (*allocatur* refused). Puritan's burden of proving by a preponderance of the evidence that the tube disconnection was caused by a malfunction can be satisfied by negating other reasonable secondary causes.

---

**2.** The parties' Amended Joint Final Pretrial Order indicates that only the strict liability theory will be pursued at trial. The discussion below is equally applicable to the warranty count. *See, Knight v. Otis Elevator Co.*, 596 F.2d 84, 89 (3d Cir. 1979); *Agostino v. Rockwell Manufacturing Co.*, 236 Pa.Super.Ct. 434, 345 A.2d 735, 738 (1975) (*allocatur* refused).

**3.** The parties have not briefed and we do not decide whether, pursuant to a finding of joint causation, a defendant liable under a strict liability theory would be entitled to contribution from a third-party defendant under a strict liability theory.

*Wojciechowski v. Long-Airdox Division of Marmon Group, Inc.*, 488 F.2d 1111, 1116–17 (3d Cir. 1973). A plaintiff need not eliminate every possible cause of the event other than malfunction, but only such other causes as fairly arise from the evidence. *Greco v. Bucciconi*, 407 F.2d 87, 91 n.7 (3d Cir. 1969).

■ However, where the explanation consistent with a defect is no more probable than an explanation inconsistent with a malfunction, the plaintiff cannot be held to have met that burden. *Lenkiewicz v. Lange*, 242 Pa.Super.Ct. 87, 363 A.2d 1172, 1175 (1976). If that is the case, the issue is not one for the jury to decide, for the jury cannot be permitted to speculate. *Sochanski, supra* at 70; *Lenkiewicz, supra* 363 A.2d at 1175.

■ Bard contends the undisputed facts suggest two possible secondary causes for disconnection of the tube: (1) involuntary arm movement by Mrs. Sherman, such as that witnessed by Sherman during the week before the accident; and (2) loosening and disconnection because of a bed bath and respiratory therapy administered to Mrs. Sherman on the eventful day. Either possibility is reasonable in view of the undisputed facts that the tubing was disposable and designed to disconnect, the ventilator was next to Mrs. Sherman's bed during the period of the bath and therapy, and the tubing was checked visually but not physically by hospital personnel on December 25, 1978, prior to the time of the bath and therapy. These reasonable secondary causes are fairly inferred from the record. It is Puritan's burden in responding to Bard's motion to negative both of these causes, and this it has failed to do.

Puritan has offered evidence that the disconnection caused by involuntary arm movement to which Sherman testified was of the cardiac monitor and not the ventilator. Puritan also cites an unfiled deposition of Nurse Hoffecker to establish that Mrs. Sherman was no longer exhibiting involuntary movement on December 25, 1978. This factual dispute would defeat the summary judgment motion if causation by involuntary movement were the only one adduced.

However, Puritan fails to negative causation by treatment administered to Mrs. Sherman. She was turned from side to side and her chest percussed at 12:30 P.M. on December 25, 1978. A bed bath had been given earlier. No physical check of the tubing was made after 6:30 A.M. that day. The incident occurred between 1:00 P.M. and 1:30 P.M. Puritan argues:

> . . . it seems impossible that the tubing could have been sufficiently loosened at any of these times to cause the eventual disconnection, and yet allow the patient to be adequately and continually ventilated until sometime just before 1:30 P.M.

Because these physical contacts were so soon before the incident, alleged to have been occasioned by the defect, this assertion is insufficient to preclude summary judgment.

Respiratory technician O'Neill stated that after the incident she went to the ventilator, pulled on the expiratory line which had subsequently been reconnected, and "the whole thing fell apart." (O'Neill Dep. at 14). However a careful reading of her testimony reveals that she spoke of the *diaphragm* cap disconnecting from the *manifold*. (O'Neill Dep. at 24–25). Nurses Slater and DeFeliciantonio stated that immediately after the incident, they observed the *diaphragm* cap disconnected from the *expiratory tube*. (Slater Dep. at 10; DeFeliciantonio Dep. at 40–47). Thus, O'Neill's testimony is immaterial with respect to the disconnection of the Bard expiratory tube.

Other than O'Neill's testimony, Puritan relies *solely* on the fact of the disconnection to prove malfunction. Puritan offers no other circumstantial evidence of a defect such as the occurrence of the accident shortly after sale or similar accidents in similar products. *See Cornell, supra*, 359 A.2d at 827. No expert testimony on the size of the tubing or the capacity of its connections to withstand involuntary or indirect body movements will be offered. Puritan cannot rebut the existence of a reasonable secondary cause by citing the disconnection alone.

Where the critical facts are not in dispute and only their legal effect is at issue, the

court should rule on the question. This requirement does not encroach upon the role at trial of the factfinder, whether judge or jury. *See Azzarello v. Black Brothers Co.*, 480 Pa. 547, 391 A.2d 1020 (1978). A line exists between permissible inferences from the record which create factual disputes for the jury to decide and speculation which will not suffice to avoid summary judgment.

On this record, an explanation of the incident by means of a secondary cause is equally as likely as Puritan's theory of liability. It would invite impermissible speculation to allow Puritan's claim against Bard to go to a jury.

## ORDER

AND NOW, this 29 day of July, 1982, for the reasons stated in the accompanying memorandum, it is ORDERED that:

1. The Motion for Summary Judgment of third-party defendant Bard-Parker, a division of Becton Dickson and Company, is GRANTED.

2. Trial of liability and damages will be bifurcated.

3. A final pretrial conference will be held on October 5, 1982 at 4:30 P.M., after which this matter shall be placed in the trial pool.