Lee Robin RASKIN and Neil Grossman

v.

FORD MOTOR COMPANY, Lee B. Horne, Susan Miller, James Whittingham, City of Philadelphia and Rasul Memon

Appeal of: Lee Robin Raskin

Lee Robin Raskin and Neil Grossman

v.

Lee B. Horne, Susan Miller, James Whittingham, City of Philadelphia, Rasul Memon and Ford Motor Company

Appeal of: Ford Motor Company

Superior Court of Pennsylvania.

Argued March 11, 2003.
Filed Nov. 19, 2003.

Harris R. Rosen, Philadelphia, for appellant.

Thomas M. Hinchey, Wayne, for appellee.

Before: DEL SOLE, P.J., GRACI and BECK, JJ.

DEL SOLE, P.J.:

¶ 1 This is an appeal from the judgment entered, following a jury trial, in favor of Appellee Ford Motor Company ("Ford"). Appellant Lee Robin Raskin ("Appellant") filed this product liability action to recover for injuries she sustained in a motor vehicle accident. Appellant was the driver of a Ford vehicle struck in the rear, as part of a chain collision, while stopped at a red light. Appellant's suit against Ford is based upon her assertion that the Ford's seat and/or restraint system was defective, and that its failure at the time of the accident resulted in enhanced injuries to her.

¶ 2 Appellant raises five issues for our review: (1) whether the trial court improperly prohibited evidence and jury instructions concerning Ford's failure to produce the allegedly defective driver's seat; (2) whether the trial court improperly dismissed the other defendants from the case; (3) whether the trial court improperly prohibited evidence concerning Ford's dismissal of its cross-claims against the other defendants and Ford's failure to join additional defendants; (4) whether the trial court's jury instruction on burden of proof was improper; and (5) whether the trial court's jury instructions on the crashworthiness doctrine was improper. We affirm.[1]

¶ 3 Appellant first argues the trial court improperly prohibited her from introducing an adverse inference argument stemming from the fact that Ford failed to produce the original driver's seat. Ford bought the vehicle from a third party prior to trial. At this trial, Ford informed the court the seat had gone missing from the courtroom following an earlier trial in this action. The trial court accepted Ford's explanation, and refused to attach an adverse inference to Ford's failure to produce the seat. The trial court's ruling on this issue lies within the sound discretion of the trial court and will not be reversed absent abuse of that discretion. *Clark v. Philadelphia College of Osteopathic Med.*, 693 A.2d 202, 204 (Pa.Super.1997).

¶ 4 Appellant argues she should benefit from the following general rule: "...where evidence which would properly

---

1. We note Ford has filed a cross-appeal in this action. Ford was not aggrieved by the judgment appealed from, and thus has no standing to appeal. Pa.R.A.P. 501; *Ratti v. Wheeling Pittsburgh Steel Corp.*, 758 A.2d 695, 700 (Pa.Super.2000). Further, the issues raised in Ford's cross-appeal are rendered moot by our disposition of the case. Accordingly, Ford's cross-appeal is quashed.

be part of a case is within the control of the party in whose interest it would naturally be to produce it, and, without satisfactory explanation he fails to do so, the jury may draw an inference that it would be unfavorable to him." *Id.* (citations omitted) (emphasis added). While Appellant accurately describes the law, the application of this law fails to afford her any relief. As highlighted above, a principal prerequisite for obtaining an adverse inference is that the party controlling the evidence is without a satisfactory explanation for its failure to produce the evidence. In this case, the trial court found Ford's explanation, that the evidence was mislaid at the courthouse during the first trial, satisfactory. We find no abuse of discretion in the trial court's evaluation of Ford's explanation or in its corresponding ruling.[2]

¶ 5 Appellant's next two arguments concern the inclusion and exclusion of third parties. First, Appellant argues the trial court should not have permitted the dismissal of the other drivers involved in the accident from the case. Next, Appellant argues she should have been permitted to refer to Ford's dismissal of its cross-claims against the other drivers and Ford's failure to join as defendants Appellant's treating physicians. Appellant claims she was prejudiced by her inability to reference third parties because the jury may have returned the verdict for Ford based on the jurors' reluctance to place sole blame for Appellant's injuries on Ford.

■ ¶ 6 We find the jury's verdict on the first interrogatory question dispositive of these issues. In response to the first interrogatory, the jury found no defect in the seat and/or restraint system. The existence of a defect in the Ford product is inherently and wholly independent of any actions by other drivers or treating physicians. Appellant's argument that the jury may have based its verdict on this question on irrelevant considerations is based on pure speculation, which, if accepted, would necessitate the conclusion that the jury disregarded its specific instructions. Where there is no evidence to support such an argument, we can not grant relief.

■ ¶ 7 Appellant's next issue concerns the trial court's instruction to the jury on Appellant's burden of proof. We review challenges to jury instructions as follows:

> In examining these instructions, our scope of review is to determine whether the trial court committed clear abuse of discretion or error of law controlling the outcome of the case. Error in a charge is sufficient ground for a new trial, if the charge as a whole is inadequate or not clear or has a tendency to mislead or confuse rather than clarify a material issue. A charge will be found adequate unless "the issues are not made clear to the jury or the jury was palpably misled by what the trial judge said or unless there is an omission in the charge which amounts to fundamental error." A reviewing court will not grant a new trial on the ground of inadequacy of the charge unless there is a prejudicial omission of something basic or fundamental. In reviewing a trial court's charge to the jury, we must not take the challenged words or passage out of context of the whole of the charge, but must look to the charge in its entirety.

*Stewart v. Motts*, 539 Pa. 596, 654 A.2d 535, 540 (1995) (citations omitted).

¶ 8 The instruction was given as follows:

---

2. We note, with interest, that Appellant's father retained ownership of the vehicle at the time of this action's 1992 commencement and for a significant period thereafter, before selling it to a third party from whom Ford purchased the car in 1997.

When an explanation consistent with the existence of a defect is as probable as an explanation inconsistent with the defect, then the plaintiff has not met her burden of proof. In that case, your verdict must be for Ford Motor Company.

N.T., 9/25/00, at 77.

¶ 9 Appellant argues this instruction was improper because it was not supported by the evidence where Ford did not provide an explanation for the accident which was inconsistent with the existence of a defect. Appellant's argument is based on her interpretation of caselaw enunciated in *Lonon v. Pep Boys*, 371 Pa.Super. 291, 538 A.2d 22 (1988). In *Lonon*, plaintiff sustained injuries when his car battery exploded during his attempt to jump-start it. Plaintiff filed suit against the manufacturer and retailer of the battery attempting to prove a defect pursuant to a malfunction doctrine. A panel of this Court, upon reviewing the jury instructions on malfunction, found the following law instructive:

We do not hold a plaintiff must refute all possible explanations offered by a defendant. But where an explanation consistent with the existence of a defect is as probable as an explanation inconsistent with the existence of a defect, the plaintiff cannot be held to have met his burden.

*Id.* at 26 (quoting *Lenkiewicz v. Lange*, 242 Pa.Super. 87, 363 A.2d 1172 (1976)).

¶ 10 Applying the above-stated law to the case before it, the *Lonon* court held:

Here, there was expert testimony offered by General Battery that the explosion could likely have been caused by an external spark created by Lonon's attempt to improperly jump-start the battery. That explanation is inconsistent with the existence of a defect, and is just as probable as the existence of a defect. Thus, appellee-Lonon did not meet his burden of demonstrating a malfunction

occurred and the jury should not have been instructed on the doctrine.

*Lonon,* 538 A.2d at 26.

¶ 11 Appellant argues *Lonon* stands for the proposition that a plaintiff does not sustain its burden of proof in a malfunction theory case when the defendant furnishes an alternative explanation for the accident, which the jury accepts. We agree. Appellant further argues Ford did not provide any alternative explanations for the accident in the instant case, and thus was not entitled to the benefit of an instruction like that in *Lonon.* We disagree.

¶ 12 Unlike in *Lonon,* the injuries to Appellant were alleged to have occurred in two distinct stages. Appellant uses the term "accident" to refer to the initial impact to the car. Ford does not attempt to provide an alternative explanation for that accident, because Ford is not defending itself from causing that accident. The case against Ford stems from Appellant's allegation that she sustained additional, enhanced injuries following the initial accident as a result of a defect in Ford's product. For this "accident," Appellant's sustenance of "post-collision" injuries, Ford did provide alternative explanations. For example, Ford's expert, Dr. Vern Roberts, an engineer with a background in biomechanics, testified that "post-collision" injuries can be sustained even with a properly functioning seat and seat belt system. N.T., 9/22/00, at 103. Dr. Roberts further testified that, given the speed and angle of the initial impact, "it doesn't make any difference if you wear a seat belt or not." *Id.* at 107.

¶ 13 Finally, Appellant argues the trial court improperly instructed the jury on the doctrine of crashworthiness instead of limiting its instructions to the doctrine of malfunction. Appellant has misapprehended the applicable law. The

above-listed doctrines are not mutually exclusive, nor are they alternative theories of recovery in a products liability case. The doctrine of malfunction is an evidentiary tool whereby a plaintiff may prove the existence of a defect. It has been explained as follows:

> In most instances the plaintiff will produce direct evidence of the product's defective condition. In some instances, however, the plaintiff may not be able to prove the precise nature of the defect in which case reliance may be had on the "malfunction" theory of product liability. This theory encompasses nothing more than circumstantial evidence of product malfunction. It permits a plaintiff to prove a defect in a product with evidence of the occurrence of a malfunction and with evidence eliminating abnormal use or reasonable, secondary causes for the malfunction. It thereby relieves the plaintiff from demonstrating precisely the defect yet it permits the trier-of-fact to infer one existed from evidence of the malfunction, of the absence of abnormal use and of the absence of reasonable, secondary causes.

*Rogers v. Johnson & Johnson Products, Inc.,* 523 Pa. 176, 565 A.2d 751, 754 (1989) (citations omitted).

■ ¶ 14 A defect is merely one element of the crashworthiness doctrine. This doctrine has been explained as follows:

> The crashworthiness or second collision doctrine is merely a subset of a Section 402(a) products liability action and routinely arises in the context of a vehicular accident. Historically, a Section 402(a) strict products liability action only created liability for injuries proximately caused by a defect where the defect also caused the accident. However, the crashworthiness doctrine extends the liability of manufacturers and sellers to "situations in which the defect did not cause the accident or initial impact, but rather increased the severity of the injury over that which would have occurred absent the design defect. Therefore, in order for a manufacturer to avoid liability, it must design and manufacture a product that is "reasonably crashworthy", or alternatively stated, the manufacturer must contemplate accidents among the intended uses of its product.

*Colville v. Crown Equip. Corp.,* 809 A.2d 916, 922 (Pa.Super.2002) (citations omitted).

¶ 15 The trial court instructed the jury according to the malfunction doctrine:

> Now, I would like to talk to you about is [sic] proving a defect by proving a malfunction. A plaintiff in a strict products liability case, which is another way of saying a products liability case, may prove her case merely by showing the occurrence of a malfunction of a product during normal use. The plaintiff does no [sic] have to prove the existence of a specific defect in the product.

> The plaintiff has to prove three facts. She must prove that the product malfunctioned; that it was given only normal or anticipated usage before the injuries occurred, and that there is no reasonable secondary cause that was responsible for causing the enhanced injuries.

N.T., 9/25/00, at 77.

¶ 16 Accordingly, Appellant received the maximum benefit of the malfunction doctrine. Again, we note the jury found no defect existed. If Appellant had been able to pursue the malfunction doctrine as a theory of liability, her case would have failed, given this verdict.

¶ 17 Appellant, however, argues the jury "may have been confused by the crashworthiness standards and might have held

[Appellant] accountable to these standards." Appellant's Brief at 22. The crashworthiness standards and relevant related portions of the charge, as explained to the jury by the trial court, were as follows:

Now, I want to talk to you about crashworthiness. The crashworthiness doctrine, and you remember I told you that this is a products liability case, or what we call a strict liability case, and under that, there is a subset which is called crashworthiness which only applies to cars. The crashworthiness doctrine provides that a manufacturer is liable in the accident or the initial impact, but rather increased the severity of the injuries other that [sic] which would have occurred absent the defect.

The term crashworthiness means the protection that a motor vehicle affords it [sic] passenger against personal injury or death as a result of a motor vehicle accident.

The term second collision, as used in the definition of crashworthiness of a motor vehicle in products liability cases generally refers to the collision of a passenger within the interior part of the vehicle after the initial impact for a collision. The principle behind the second collision concept is that because of the way the vehicle has been manufactured, the person's injuries have been aggravated unnecessarily.

The effect of the crashworthiness doctrine is that a manufacturer has a legal duty to design and manufacture its product to be reasonable crashworthy. In terms of strict products liability, this means that a manufacturer has to include accidents among the intended uses of its product. A manufacturer who fails to fulfill this legal duty will be liable to the passenger of a car—which, of course, includes the driver—whose injuries are increased due to the design defect in the automobile.

Liability will attach even though the defect in manufacture or design did not cause the initial accident or impact.

In order to prevail in this case on a crashworthiness theory, the plaintiff must demonstrate the following:

1. That there was a defect;

2. What injuries; if any, would have resulted and [sic] there had been no defect;

3. Some method of establishing the extent of the plaintiff's enhanced injuries that are attributable to the defects.

If you find that [sic] product was defective, the defendant is liable for all harm caused by such defective condition.

Let me repeat that and used the word enhanced, because that's very important. If you find that the product was defective, the defendant is liable for all of the enhanced injuries caused by the defective condition.

A detective [sic] condition is the legal cause of the injuries if it was a substantial factor in bringing about the enhanced injuries.

The plaintiff is not required to prove that the defect cause the accident or the initial impact.

If the defect increased the severity of the injuries over what would have occurred without the defect, the manufacturer is liable for the increased injuries suffered by the plaintiff.

*Id.* at 77–80.

¶ 18 Appellant argues the jury may have been confused by these instructions, but fails to point to any specific instruction that was inaccurate or which failed to reflect the case she was attempting to prove. A review of Appellant's case, from opening to closing statement, reveals that she presented a crashworthiness case using the

malfunction doctrine to prove the defect element of the case. We fail to see how the jury instructions, which reflected a clear and accurate recital of the relevant law, prejudiced Appellant.

¶ 19 Appeal at 1845 EDA 2001: judgment affirmed. Appeal at 2393 EDA 2001 quashed.