J-A14020-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| SEAN WEST AND AMY WEST, AS PARENTS AND NATURAL GUARDIANS OF JULIANA WEST, A MINOR, INDIVIDUALLY AND IN THEIR OWN RIGHT; AND NEW YORK PRIVATE TRUST COMPANY, | : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | : : : | |
| | : : | No. 3666 EDA 2017 |
| v. | : : : | |
| ABINGTON MEMORIAL HOSPITAL D/B/A/ ABINGTON HOSPITAL-JEFFERSON HEALTH; REGINA P. STURGIS-LEWIS, M.S.N.; AND JOEL I. POLIN, M.D., | : : : : : | |

Appeal from the Order November 2, 2017
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): November Term 2016, No. 967

BEFORE: GANTMAN, P.J., SHOGAN, J., and PLATT*, J.

MEMORANDUM BY SHOGAN, J.: **FILED SEPTEMBER 07, 2018**

Sean West and Amy West, as parents and natural guardians of a minor, Juliana West, and New York Private Trust Company (collectively "Appellants") appeal from the trial court's order, entered November 2, 2017, sustaining the preliminary objections to venue filed by Abington Memorial Hospital doing business as Abington Hospital–Jefferson Health, Regina P. Sturgis-Lewis, M.S.N., and Joel I. Polin. M.D. (collectively "Appellees"). After careful review, we affirm.

The trial court set forth the following factual background:

_____

* Retired Senior Judge assigned to the Superior Court.

On February 13, 2007[, Appellant] Amy West delivered a baby girl, Juliana[,] at Abington Memorial Hospital ("the Hospital"). During [Appellant] Amy West's labor and delivery she suffered severe complications, including the rupture of her uterus. Minor [Juliana] suffered a profound brain injury as a result of the complications. The West family subsequently filed a malpractice action against [Appellees]. The case ("West I") went to trial and upon the close of [Appellants'] case in chief, the parties settled for an undisclosed amount.

One of the central legal questions presented in West I was whether the administration of Pitocin caused [Amy West's and Juliana West's] injuries. [Appellants] contended that a continuous dosage of Pitocin-like the one [Appellant] Amy West received during her labor and delivery-led to the serious complications she and her baby suffered. [Appellees] contended that in an unscarred uterus, like [Appellant] Amy West's, there was little to no risk for such complications. Representatives of the [Appellees] even stated during deposition that Pitocin was safe, so long as there was no change in the baby's heart rate after Pitocin was administered.

During discovery[, Appellants] sought information from the Hospital on protocols and guidelines surrounding the use of Pitocin. In response to these discovery requests [Appellees] produced guidelines drafted in 2004 ("the 2004 guidelines") stating that there was no risk of serious complications associated with the use of Pitocin in an unscarred uterus. Two years after the 2004 guidelines were circulated to Hospital staff, a medical journal published a case study detailing a catastrophic patient outcome that resulted from administering Pitocin to a laboring mother with an unscarred uterus. The case study detailed how even in this unscarred uterus, a high dose of Pitocin led to uterine rupture and severe brain injury to the baby. The publication of this case study led the Hospital to issue a second set of guidelines in 2006 ("the 2006 guidelines"). The 2006 guidelines discussed the case study and detailed the risk of uterine rupture associated with Pitocin, even when administered to women with an unscarred uterus. During discovery in West I, the hospital turned over the 2004 guidelines, but not the 2006 guidelines.

[Appellants] in this subsequent case ("West II") now assert two claims against the Hospital: (1) fraud in the inducement; and (2) negligence. Underlying these claims is [Appellants'] argument that [Appellees] deliberately withheld the 2006 guidelines during West I discovery in an effort to get [Appellants] to settle for less than their case was worth. [Appellants] also argue that [Appellees] had a duty to be truthful during discovery, which they breached.

Trial Court Opinion, 2/13/18, at unnumbered 1–3.

The trial court also provided the following procedural background:

On November 14, 2016[, Appellants] filed the present lawsuit in the Philadelphia County Court of Common Pleas. On January 12, 2017[, Appellees] filed Preliminary Objections to [Appellants'] complaint. On [January] 31, 2017[, Appellants] filed an amended complaint and on February 6, 2017[,] the Preliminary Objections were marked moot. On February 21, 2017[, Appellees] filed a second set of Preliminary Objections and on March 13, 2017[, Appellants] filed a second amended complaint. As a result, on March 16, 2017[,] the Preliminary Objections were once again marked moot. Both of these prior iterations of Preliminary Objections raised the issue of venue.

On April 3, 2017[, Appellees] filed a third set of Preliminary Objections arguing that venue is improper in Philadelphia because (1) the individual [Appellees] do not work or reside in Philadelphia; (2) Abington Hospital does not have a registered office or principal place of business in Philadelphia; (3) Abington Hospital does not regularly conduct business in Philadelphia; and (4) the transaction or occurrence did not take place in Philadelphia. [Appellants] responded on April 24, 2017[,] arguing that there were multiple bases to make Philadelphia a proper venue. Specifically[, Appellants] stated that venue was proper because the relevant legal work in West I took place in Philadelphia, that Abington Hospital regularly conducts business in Philadelphia pursuant to a recent merger between the Hospital and Thomas Jefferson University and certain incidental activities with Philadelphia Hospitals. [Appellants] also argued . . . that venue was proper against the individual [Appellee] because Dr. Joel I. Polin worked at Temple University Hospital.

- 3 -

On April 28, 2017[,] this [c]ourt ordered the parties to submit supplemental briefing on the issue of venue and allowed the parties to conduct limited discovery related to venue. The Order stated that supplemental briefing on the issue of venue was due from the parties on June 30, 2017. On May 11, 2017[,] this case was consolidated with a case subsequently filed on March 17, 2017. On July 5, 2017[,] the parties and this [c]ourt agreed to extend the deadline for supplemental briefing and set a new due date of August 18, 2017. The parties timely filed supplemental briefing consistent with this extension.

On November [2], 2017[,] this Court sustained [Appellees'] Preliminary Objections to venue and transferred the case to Montgomery County. Appellants timely appealed this [c]ourt's Order on November 7, 2017. Pursuant to this [c]ourt's Order, [Appellants] filed a Statement of Matters Complained of on Appeal pursuant to Pa. R.A.P. 1925(b) on December 21, 2017.

Trial Court Opinion, 2/13/18, at unnumbered 3–4.

Appellants present a single question for our review:

1. In this negligence and fraud action, did the trial court err in finding that Abington is not subject to venue in Philadelphia where Abington conducts substantial and regular business in Philadelphia (generating [redacted] annually in revenue)?"

Appellants' Brief at 2.

Our scope and standard of review are as follows:

It is well established that a trial court's decision to transfer venue will not be disturbed absent an abuse of discretion. A [p]laintiff's choice of forum is to be given great weight, and the burden is on the party challenging the choice to show it was improper. However, a plaintiff's choice of venue is not absolute or unassailable. Indeed, if there exists any proper basis for the trial court's decision to grant a petition to transfer venue, the decision must stand.

***Wimble v. Parx Casino and Greenwood Gaming & Entertainment, Inc.***,

40 A.3d 174, 177 (Pa. Super. 2012) (citation omitted). The presumption in

favor of the plaintiff's choice of forum has no application to the question of whether venue is proper in the plaintiff's chosen forum; venue "either is or is not proper." ***Kring v. University of Pittsburgh***, 829 A.2d 673, 676 (Pa. Super. 2003). Venue is a specific inquiry and each case must be judged upon its individual facts. ***Wimble***, 40 A.3d at 177. Furthermore, the propriety of venue is to be determined at the time the suit is initiated. ***Zappala v. Brandolini Property Management***, 909 A.2d 1272, 1281 (Pa. 2006).

Pursuant to Pa.R.C.P. 2179(a), which governs venue in actions involving corporations:

> [a] personal action against a corporation or similar entity may be brought in and only in
>
> (1)  the county where its registered office or principal place of business is located;
>
> (2)  a county where it regularly conducts business;
>
> (3)  the county where the cause of action arose;
>
> (4)  a county where a transaction or occurrence took place out of which the cause of action arose, or
>
> (5)  a county where the property or a part of the property which is the subject matter of the action is located provided that equitable relief is sought with respect to the property.

Pa.R.C.P. 2179(a).

On appeal, Appellants argue, pursuant to Pa.R.C.P 2179(a)(2), that venue was proper in Philadelphia County because the Hospital regularly conducts business there. "In determining whether a corporation or partnership regularly conducts business in a county, we employ a quality-

quantity analysis." ***Zampana-Barry v. Donaghue***, 921 A.2d 500, 503 (Pa. Super. 2007). "A business entity must perform acts in a county of sufficient quality and quantity before venue in that county will be established." ***Id***. The quality prong is satisfied when the entity performs acts that are essential to its business objective in the county; incidental acts are not sufficient. ***Id***. The quantity prong requires the acts "are sufficiently continuous so as to be considered habitual." ***Id***.

Instantly, we have thoroughly reviewed the briefs of the parties, the relevant law, and the certified record before us, including the opinion of the trial court dated February 13, 2018, which addresses the issues raised by Appellants in their Pa.R.A.P. 1925(b) statement. Upon review, it is our determination that Appellants have failed to establish that the trial court abused its discretion when it sustained Appellees' preliminary objections to venue and transferred venue from Philadelphia County to Montgomery County. Thus, we conclude that the issue presented by Appellants lacks merit, and the trial court's opinion adequately addresses Appellants' claim raised on appeal. Accordingly, we affirm on the basis of the trial court's opinion and adopt its reasoning as our own. The parties are directed to attach a copy of that opinion in the event of further proceedings in this matter.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/7/18

## IN THE COURT OF COMMON PLEAS
## FIRST JUDICIAL DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SEAN WEST and AMY WEST, p/n/g of JULIANA WEST, a minor, individually and in their own right; and NEW YORK PRIVATE TRUST COMPANY,<br>   *Plaintiffs*<br><br>  v.<br><br>ABINGTON MEMORIAL HOSPITAL d/b/a ABINGTON HOSPITAL – JEFFERSON HEALTH; REGINA P. STURGIS-LEWIS, M.S.N. and JOEL I. POLIN, M.D.<br>   *Defendants* | November Term, 2016<br><br><br><br>No. 161100967<br>3666 EDA 2017 |

| | |
|---|---|
| SEAN WEST and AMY WEST, p/n/g of JULIANA WEST, a minor, individually and in their own right; and NEW YORK PRIVATE TRUST COMPANY,<br>   *Plaintiffs*<br><br>  v.<br><br>ABINGTON MEMORIAL HOSPITAL d/b/a ABINGTON HOSPITAL – JEFFERSON HEALTH; REGINA P. STURGIS-LEWIS, M.S.N. and JOEL I. POLIN, M.D.<br>   *Defendants* | March Term, 2017<br><br><br><br>No. 170301833<br>3666 EDA 2017 |



West Etal Vs Abington Memorial Hospital Etal-OPFLD

17030183300046

## OPINION

### A. FACTUAL BACKGROUND

On February 13, 2007 Plaintiff Amy West delivered a baby girl, Juliana at Abington Memorial Hospital ("the Hospital"). During Plaintiff Amy West's labor and delivery she suffered severe complications, including the rupture of her uterus. Minor Plaintiff suffered a profound brain injury as a result of the complications. The West family subsequently filed a

malpractice action against Defendants. The case ("*West I*") went to trial and upon the close of Plaintiffs' case in chief, the parties settled for an undisclosed amount.

One of the central legal questions presented in *West I* was whether the administration of Pitocin caused Plaintiffs' injuries. Plaintiffs contended that a continuous dosage of Pitocin—like the one Plaintiff Amy West received during her labor and delivery—led to the serious complications she and her baby suffered. Defendants contended that in an unscarred uterus, like Plaintiff Amy West's, there was little to no risk for such complications. Representatives of the Defendants even stated during deposition that Pitocin was safe, so long as there was no change in the baby's heart rate after Pitocin was administered.

During discovery Plaintiffs sought information from the Hospital on protocols and guidelines surrounding the use of Pitocin. In response to these discovery requests Defendants produced guidelines drafted in 2004 ("the 2004 guidelines") stating that there was no risk of serious complications associated with the use of Pitocin in an unscarred uterus. Two years after the 2004 guidelines were circulated to Hospital staff, a medical journal published a case study detailing a catastrophic patient outcome that resulted from administering Pitocin to a laboring mother with an unscarred uterus. The case study detailed how even in this unscarred uterus, a high dose of Pitocin led to uterine rupture and severe brain injury to the baby. The publication of this case study led the Hospital to issue a second set of guidelines in 2006 ("the 2006 guidelines"). The 2006 guidelines discussed the case study and detailed the risk of uterine rupture associated with Pitocin, even when administered to women with an unscarred uterus. During discovery in *West I*, the hospital turned over the 2004 guidelines, but not the 2006 guidelines.

The Wests in this subsequent case ("*West II*") now assert two claims against the Hospital: (1) fraud in the inducement; and (2) negligence. Underlying these claims is Plaintiffs' argument that Defendants deliberately withheld the 2006 guidelines during *West I* discovery in an effort to get Plaintiffs to settle for less than their case was worth. Plaintiffs also argue that Defendants had a duty to be truthful during discovery, which they breached.

## B. PROCEDURAL BACKGROUND

On November 14, 2016 Plaintiffs filed the present lawsuit in the Philadelphia County Court of Common Pleas. On January 12, 2017 Defendants filed Preliminary Objections to Plaintiffs' complaint. On Janaury 31, 2017 Plaintiffs filed an amended complaint and on February 6, 2017 the Preliminary Objections were marked moot. On February 21, 2017 Defendants filed a second set of Preliminary Objections and on March 13, 2017 Plaintiffs filed a second amended complaint. As a result, on March 16, 2017 the Preliminary Objections were once again marked moot. Both of these prior iterations of Preliminary Objections raised the issue of venue.

On April 3, 2017 Defendants filed a third set of Preliminary Objections arguing that venue is improper in Philadelphia because (1) the individual defendants do not work or reside in Philadelphia; (2) Abington Hospital does not have a registered office or principal place of business in Philadelphia; (3) Abington Hospital does not regularly conduct business in Philadelphia; and (4) the transaction or occurrence did not take place in Philadelphia. Plaintiff responded on April 24, 2017 arguing that there were multiple bases to make Philadelphia a proper venue. Specifically Plaintiff stated that venue was proper because the relevant legal work in *West I* took place in Philadelphia, that Abington Hospital regularly conducts business in Philadelphia pursuant to a recent merger between the Hospital and Thomas Jefferson University and certain incidental

activities with Philadelphia Hospitals. Plaintiffs also argued and that venue was proper against the individual defendant because Dr. Joel I. Polin worked at Temple University Hospital.

On April 28, 2017 this Court ordered the parties to submit supplemental briefing on the issue of venue and allowed the parties to conduct limited discovery related to venue. The Order stated that supplemental briefing on the issue of venue was due from the parties on June 30, 2017. On May 11, 2017 this case was consolidated with a case subsequently filed on March 17, 2017. On July 5, 2017 the parties and this Court agreed to extend the deadline for supplemental briefing and set a new due date of August 18, 2017. The parties timely filed supplemental briefing consistent with this extension.

On November 1, 2017 this Court sustained Defendants' Preliminary Objections to venue and transferred the case to Montgomery County. Plaintiffs timely appealed this Court's Order on November 7, 2017. Pursuant to this Court's Order, Plaintiff filed a Statement of Matters Complained of on Appeal pursuant to Pa. R.A.P. 1925(b) on December 21, 2017. Plaintiffs alleged that this Court erred in transferring venue to Montgomery County because relevant transactions or occurrences of this suit took place in Philadelphia, Abington Hospital regularly conducts business in Philadelphia, and individual defendant Dr. Polin was employed by Temple University Hospital at all times material to the relevant action.

### C. DISCUSSION

#### 1. Standard of Review

The Pennsylvania Supreme Court has repeatedly held that a determination as to the propriety of venue is a fact specific determination and that each case should be judged "on its own facts. . . ." Shambe v. Delaware & H. R. Co., 135 A. 755, 758 (Pa. 1927); see Canter v. Amer. Honda Motor Corp., 231 A.2d 140, 142 (Pa. 1967). In making a determination based on such facts,

trial courts are given great discretion in deciding whether venue is proper. Purcell v. Bryn Mawr Hosp., 579 A.2d 1282, 1285 (Pa. 1990). The standard of review of a trial court's decision to transfer venue is abuse of discretion. Peters v. Sidorov, 855 A.2d 894, 896 (Pa. Super. Ct. 2004). An abuse of discretion is shown by a record of misapplication of the law, or judgment that is manifestly unreasonable, or motivated by partiality, prejudice, bias, or ill-will. *Id.*; *see Kring v. Univ. of Pittsburgh*, 829 A.2d 673, 675 (Pa. Super. Ct. 2003), *appeal denied*, 844 A.2d 553 (Pa. 2004)). The Pennsylvania Superior Court has further elaborated that "[i]f there is any basis to affirm a trial court's decision to transfer venue, the decision must stand." *Peters*, 855 A.2d at 896.

## 2. Analysis

Under the Pennsylvania Rules of Civil Procedure, in a case with multiple defendants venue is proper in any county where venue may be properly laid against any defendant. PA. R. C. P. No. 1006(c); Zappala v. Brandolini Mgmt., 90 A.2d 1272, 1281 (Pa. 2006). Thus, in the present case venue would be proper in Philadelphia if it were proper against either Abington Hospital or either of the individual defendants. *Zappala*, 90 A.2d at 1281; *see* PA. R. C. P. No. 1006; PA. R.C.P. 2179(a).

### a. Corporate Defendant Abington Hospital

An action against a corporation may be brought in (1) the county where its registered office or principal place of business is located; (2) *a county where it regularly conducts business*; (3) the county where the cause of action arose; (4) *a county where a transaction or occurrence took place out of which the cause of action arose*, or (5) a county where the property or a part of the property which is the subject matter of the action is located, provided that equitable relief is sought with respect to the property. PA. R.C.P. 2179(a) (emphasis added). Under this statutory framework, Plaintiff argues that in the present case venue is proper in Philadelphia for two reasons. One,

Plaintiff argues that venue is proper in Philadelphia because a transaction or occurrence—namely the legal work in *West I*—took place in Philadelphia. Two, Plaintiff argues that Abington Hospital regularly conducts business in Philadelphia. Each argument is addressed in turn below.

    i.    *The Legal Work Completed in Philadelphia is Not a "Transaction or Occurrence" for purposes of laying venue*

As to Plaintiffs' first argument, venue is not proper in Philadelphia because even though some relevant legal work on the *West I* case took place in Philadelphia, the actual transaction or occurrence giving rise to *West II* took place in Montgomery County. *See* Craig v. W.J. Thiele, 149 A.2d 35, 37 (Pa. 1959) (stating that Pennsylvania's venue rules do not allow for suit to be brought in any county where any facet of a transaction occurred); Kring v. Univ. of Pitt., 829 A.2d 673, 678 (Pa. Super. 2003) (stating that a "transaction or occurrence" for purposes of venue requires more than just some part of the transaction). Pennsylvania courts have stated that "transaction or occurrence" within the meaning of the means the happenings that make up the operative facts to satisfy all the elements of the underlying cause of action. *Kring*, 829 A.2d at 678 (holding that in an action for wrongful use of civil proceedings the relevant transaction or occurrence occurred where the prior, allegedly wrongful case was brought and tried); *see Deyarmin*, 931 A.2d at 14 (holding that in an action brought under FELA the relevant transaction or occurrence occurred where hazardous waste was processed before being transported to the situs of Plaintiff's exposure); Sunderland v. R.A. Barlow Homebuilders, 791 A.2d 384, 392 (Pa. Super. Ct. 2002) (holding that in an action for wrongful death the relevant transaction or occurrence was where the events preceding and leading up to the accident occurred, not where decedent died).

As applied in the present case, the legal work that took place in Philadelphia is not a transaction or occurrence within the meaning of the venue statute. *See* Estate of Werner v. Werner, 781 A.2d 188, 192 (Pa. Super. Ct. 2001) (holding that the physical location of the attorneys

working on the underlying transaction and engaging in communication with those attorneys was insufficient to constitute a transaction or occurrence within the meaning of the statute). Although some work did take place in Philadelphia this legal work was not the work that is critical to proving Plaintiff's claim. *See* PA. R.C.P. 2179(a); *Deyarmin*, 931 A.2d at 14; *Sunderland*, 791 A.2d at 392; *Werner*, 781 A.2d at 192. Here, the actual settlement—which Plaintiffs base their fraud claim on— took place in Montgomery County at the courthouse following the close of Plaintiff's case in chief. Further, the 2006 document originated in Montgomery County and at some point was turned over to counsel from the Hospital in Montgomery County. As such, considering that these relevant events crucial to proving Plaintiffs' claim did *not* take place in Philadelphia then Philadelphia is not a proper venue. *See* PA. R.C.P. 2179(a); *Deyarmin*, 931 A.2d at 14; *Sunderland*, 791 A.2d at 392; *Werner*, 781 A.2d at 192.

ii.  *Abington Hospital Does Not Regularly Conduct Business in Philadelphia*

Secondly, Plaintiffs argue that venue in Philadelphia is proper because the Hospital regularly conducts business in Philadelphia. *See* PA. R.C.P. 2179(a). Plaintiff bases this argument on the fact that the Hospital recently merged with Thomas Jefferson University Health System and operates as Abington-Jefferson Health. Plaintiff also argues that the Hospital's educational and training relationships with healthcare providers and hospitals in Philadelphia constitute regularly conducting business in Philadelphia. *See id.*

For purposes of laying venue, a corporation regularly conducts business in a county if its contacts with that county are of sufficient quantity and quality. Purcell v. Bryn Mawr Hosp., 579 A.2d 1282, 1286-87 (Pa. 1990); Zampana-Barry v. Donaghue, 921 A.2d 500, 503 (Pa. Super. Ct. 2007). Pennsylvania Courts have stated that both quantity *and* quality must be established to properly lay venue. *Purcell*, 579 A.2d at 1284; *Zampana-Barry*, 921 A.2d at 503. Quality in this

context means acts directly, furthering, or essential to, corporate objects. *Kisak v. Wheeling Park Comm'n*, 898 A.2d 1083, 1086 (Pa. Super. Ct. 2006); *see Zampana-Barry*, 921 A.2d at 503. Quantity means acts which are so continuous and as to be general or habitual. *Kisak*, 898 A.2d at 1086; *see Zampana-Barry*, 921 A.2d at 503.

### a. *The Purported Merger Between Abington and Jefferson Does Not Constitute Regularly Doing Business*

With regard to the alleged merger between the Hospital and Thomas Jefferson University this merger is insufficient in terms of the quality/quantity analysis. *See Purcell*, 579 A.2d at 1285; Fritz v. Glen Mills Schools, 840 A.2d 1021, 1022-23 (Pa. Super Ct. 2003). Recently, in *Griffin v. Abington Memorial Hospital*, the Honorable Arnold L. New considered this very question and ruled that any purported merger between the two entities was insufficient because the corporate transaction was not actually a merger creating one entity, but rather the transaction resulted in a parent and subsidiary relationship between the two entities. 2017 WL 2734240 (Pa. Com. Pl. June 5, 2017). As such, Judge New reasoned that this was not a merger in the legal sense of the word, but rather the transaction served a marketing purpose and therefore was more analogous to advertising. *Id.*; *see* Wimble v. Parx Casino & Greenwood Gaming and Entmt., Inc. 40 A.3d 174, 178 (Pa. Super. Ct. 2012) (holding that a corporation may not be subject to venue based solely upon the business activities of a sister corporation).

In so much as *Griffin* presents a nearly identical issue to the present case, this Court finds Judge New's reasoning persuasive. *See* 2017 WL 2734240. Here, like in *Griffin* Defendants have provided information that demonstrates that the relationship between the Hospital and Thomas Jefferson University is one of parents and subsidiaries—not a singular entity. *See* Datte Tr. 8/9/17 at 10-11, 14 (stating that the entities did not merge in the legal sense of the word and that Thomas Jefferson University does not have the ability to exercise control over the day to day operations of

Abington Hospital); *Griffin*, 2017 WL 2734240. As such, consistent with Superior Court precedent, this Court finds that the actions of Thomas Jefferson University Hospital cannot be imputed to Abington Hospital for purposes of laying venue. *See* Datte Tr. 8/9/17 at 10-11, 14; *Wimble*, 40 A.3d at 178. Similarly, in so much as the term merger is used colloquially when describing the underlying transaction between Abington Hospital and Thomas Jefferson University Hospital any such usage of the word can be analogized to advertising and as such is insufficient for purposes of laying venue. *See* Datte Tr. 8/9/17 at 10-11, 14; *Purcell*, 579 A.2d at 1287 (noting that advertising is insufficient for purposes of laying venue); Kubik v. Route 252, Inc., 762 A.2d 1119, 1125 (Pa. Super Ct. 2000) (analogizing certain web activities to newspaper and phone book advertising and holding that such is insufficient for purposes of laying venue); *Zampana-Barry*, 921 A.2d at 505 (discussing prior case precedent holding that advertising is insufficient for purposes of laying venue).

b. *The Incidental Business Conducted in Philadelphia Does Not Constitute Regularly Doing Business*

Plaintiffs also argue that venue is proper because Abington Hospital does certain incidental business in Philadelphia. Applying the quantity quality analysis to this conduct the Hospital's contacts with Philadelphia are not of sufficient quantity and quality. *See* Goodman v. Fonslick, 844 A.2d 1252, 1255-56 (Pa. Super. Ct. 2004) (stating that educational affiliations with medical schools in Philadelphia is not a sufficient contact to lay venue against Abington Hospital in Philadelphia); Krosnowski v. Ward, 836 A.2d 143, 150 (Pa. Super. Ct. 2003) (stating that the educational affiliation relationship between Abington Hospital and Children's Hospital of Philadelphia is not a sufficient contact to lay venue against Abington Hospital in Philadelphia). With regard to any educational relationship between Abington Hospital and other medical providers in Philadelphia, the Superior Court has previously stated that such relationships are

insufficient. *See Purcell*, 579 A.2d at 1287; *Goodman*, 844 A.2d at 1252; *Krosnowski*, 836 A.2d at 150. Therefore in so much as the present case is not distinguishable from prior precedent the Hospital's contacts with Philadelphia in terms of educational relationships with other medical providers such contacts are insufficient for purposes of venue.

Plaintiff also points to certain outpatient treatment and follow up care that Abington Hospital provides to residents of Philadelphia. Applying the quality-quantity analysis to this contact, such contact is equally insufficient. *See Purcell* 579 A.2d at 1285; *Fritz*, 840 A.2d at 1022-23. First, looking to the quality prong, such care is supplemental to, rather than essential to furthering Abington Hospital's corporate object—operating a hospital and providing medical care at that hospital. *See Goodman*, 844 A.2d at 1255 (stating that Abington Hospital's ownership of small branch practices in Philadelphia County is incidental to Abington Hosptial's main goal of providing hospital health care). While this Court acknowledges that each case must be considered based on its own facts, the parties have not presented this Court with information that would require this Court to reach a different conclusion than the Superior Court reached in previously considering this question. *Purcell* 579 A.2d at 1285; *Goodman*, 844 A.2d at 1255; *Krosnowski*, 836 A.2d at 150.

At the same time, even if Abington Hospital's contacts could satisfy the quality prong of the test, these contacts are of insufficient quantity to lay venue. In this regard, Abington Hospital derives less than one percent of its revenue from the incidental business it conducts in Philadelphia. Defs. Supp. Response at 4. While this Court acknowledges that even a small fraction of business can be sufficient to satisfy the quantity prong of the analysis, in this case the miniscule percentage of revenue generated from contacts with Philadelphia in the present case is simply too small. *See Canter*, 231 A.2d at 143 (finding venue proper when company generated

one to two percent of its gross income from sales in county where venue was sought); Lugo v. Farmers Pride, Inc., 967 A.2d 963, 971 (Pa. Super. Ct. 2009) (finding venue proper when company generated one to two percent of its gross income from sales in county where venue was sought); *Zampana-Barry*, 921 A.2d at 503 (finding venue proper when company generated three to five percent of its gross income from sales in county where venue was sought). In the same vein other Pennsylvania courts have been hesitant to state that less than one percent of revenue is sufficient quantity. *See, e.g.*, Jackson v. Cops Monitoring, 2017 WL 3929086 at *4 (Pa. Super. Ct. 2017) (finding venue was improper in Philadelphia County where a corporate defendant generated less than one percent of its total revenue in Philadelphia County); Banaszewski v. Corbo Landscaping Corp., 2013 WL 11253448 at *5 (Pa. Super. Ct. 2013) (finding venue was improper in Philadelphia County where a corporate defendant generated less than one percent of its total revenue in Philadelphia County).

### b. *Individual Defendant Dr. Joel I. Polin*

An action may be brought against an individual where that individual may be served. PA. R. C. P. No. 1006. An individual may be served where they live or at their usual place of business. PA. R. C. P. No. 402. In this case, individual Defendant Dr. Polin does not live or work in Philadelphia. Polin Tr. 3/7/2017 at 7-8. Rather individual Defendant Dr. Polin is retired from Temple University School of Medicine. *Id.* Despite this, Plaintiff states that venue is proper against individual Defendant Joel I. Polin, M.D. because he is an Emeritus Professor of Obstetrics and Gynecology at Temple University School of Medicine. This argument, though, misconstrues the meaning of the term emeritus. According to the Merriam-Webster dictionary, emeritus means "a person retired from professional life but permitted to retain as an honorary title the rank of the last office held[.]" By defendant Dr. Polin's own account his role at Temple

is honorary and he characterizes this role as "essentially an ex-professor." Defs. Supp. Briefs at 16-17 (quoting portions of Dr. Polin's deposition included as block quotes). In fact, Dr. Polin retired in 2014 and is no longer employed by Temple. Polin Tr. 3/7/2017 at 8. Given that Dr. Polin holds only an honorary title at his former employer, this Court finds that he cannot be properly served in Philadelphia and as such venue would not be proper against him in Philadelphia. *See* PA. R. C. P. Nos. 402, 1006.

## D. CONCLUSION

For the foregoing reasons, the decision of this Court should be affirmed.

BY THE COURT:

_____
DENIS P. COHEN, J.

Dated: February 12, 2018